BREEDLOVE *v.* STATE.

(*Knoxville,* September Term, 1948.)

(May Session, 1949.)

Opinion filed July 2, 1949.

D. S. BEELER, Rutledge, for plaintiff in error.

NAT TIPTON, Asst. Atty. Gen., for the State.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error was indicted by a grand jury of Hamblen County upon the charge of practicing medicine without having been licensed by the Board of Medical Examiners, and of practicing the healing art without a license obtained from the Licensing Board for the Healing Arts. The charges were set forth in a two count indictment. He was convicted as charged in the second count of practicing the healing art without a license and fined $400. The case is here on appeal from the judgment of the trial court overruling his motion for a new trial.

The appellant, who will be later referred to as the defendant, has filed ten assignments of error. But we deem it unnecessary to consider all of them since the case must be reversed on the facts.

The first and second assignments are to the effect that defendant should have been granted a new trial because "there is no material evidence to support the verdict of the jury."

Prior to the defendant's indictment and conviction he was a duly licensed naturopath physician. Following the repeal of the act legalizing the practice of naturopathy the State insists that the defendant continued to practice medicine without a license from the Board of Medical Examiners and to practice the "healing art" without a proper license from the Licensing Board of the Healing Arts. Since the defendant was acquitted of the first offense we will confine our consideration of the evidence bearing upon the charge of practicing the "healing art" in violation of the statute. We find no evidence in the record to sustain the verdict of the jury.

■ The witnesses for the State are highly credible, but they fail to state any fact to warrant the conclusion that the defendant was engaged in practicing the art of healing. The first witness, Dr. R. H. Hutchinson, exhibited a photostatic copy of a certificate, signed by C. M. Breedlove, to the effect that one Francis Wayne Fox died on November 11, 1947, of bronchial cardiac asthma. It is a "Certificate of Death" and was forwarded to the Department of Public Health. There was no evidence offered as to who filled out the certificate or that C. M. Breedlove, whose name is signed to it, is the defendant on trial. The witness undertook to compare the signature with one which purported to be the genuine signature of the defendant. But under all the authorities this is not permissible. The witness was next handed some photostatic copies of other papers which purported to be "copies of a report of a medical examination of a person who is applying for insurance." The name of the applicant for insurance to the Home Beneficial Life Insurance Company, Inc. was one Lockie May Elmore and the signature of the so-called medical examiner is that of "C. M. Breedlove, M. D." This application for life insurance contains many questions and answers touching the physical condition of the applicant. The witness very frankly stated he had no personal knowledge that the defendant ever made any physical examination of the applicant as a medical doctor. There is no evidence that the defendant filled out the application or that the signature to it is that of the defendant. He was asked:

"Q. And you don't know who signed them, do you? A. None, except it says Breedlove on there. It compares with the official signature that he submitted to me on a death certificate.

"Q. Now, you don't know whose writing that is on there other than the signature, do you? A. I do not.

"Q. You don't know whether it was signed before it was filled in or after? A. I do not.

"Q. You don't know who furnished that information, do you? A. I do not.

"Q. You don't know whether Dr. Breedlove made an examination of those particular individuals or not, do you? A. I do not, except what was shown on the record.

"Q. You don't know when it was made, do you? A. I do not.

"Q. Whether it was one, two or three years ago? A. No."

The next witness, Hon. Harry Avery, who assisted the prosecution, testified that the defendant "undertook to show him cards that he was a medical doctor and had a medical license to practice." This falls far short of an admission that he was practicing the healing art. He was asked:

"Q Did he say whether or not he was practicing medicine? A. Not at that time."

He next referred to the death certificate of Francis Wayne Fox, signed by C. M. Breedlove, and was asked:

"Q. All right, now how long did he say he treated him, or what did he say? One time or several times or how? A. He didn't go into that.

"Q. Did he say where he treated him? A. He said he came over here to the Fox home at the request of the parents of this boy."

He next testified he saw no license exhibited anywhere, etc. There is nothing further in the record to show what treatments, if any, he administered to the boy at the Fox home.

The next witness was Ross A. Davis who testified that he was a funeral director and that he received the death certificate of the Fox boy through the mail and it was signed C. M. Breedlove. He testified on cross examination that he had no knowledge "that Dr. Breedlove has treated anybody in Hamblen County."

The next witness, Dr. C. B. Tucker, testified he was Secretary of the State Licensing Board for Healing Arts, and that there was no record to show that the defendant was granted a license, etc.

While there is no competent evidence in the record to show that the defendant signed the several documents offered as exhibits by the State's witnesses, we hold that if there was it would fall far short of showing that he was practicing the healing art. Surely the mere signing of a death certificate does not, in and of itself, furnish proof that the signer practiced the "healing art" upon the deceased. He certified that he died from certain causes. But there is nothing to show upon what he based his judgment. While Mr. Avery testified that the defendant told him he went to the home of the deceased at the request of the family there is nothing to show he administered any drug, or medical potion, or rendered any medical aid to the sick boy.

Considering the State's proof as competent to show that the defendant filled out an application for insurance to the Home Benefit Insurance Company for Lockie May Elmore, and also Myrtle Kimbro, and signed it as a medical examiner for the company, we are constrained to hold that this does not constitute practicing the healing art. These applicants were not seeking any medical aid of any kind and none was rendered.

The assignments of error are sustained and the cause reversed and dismissed. All concur.