# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

MARCH 1997 SESSION

FILED

June 17, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **JOSEPH MASON RHINERSON,** | ) | |
| | ) | |
| Petitioner, | ) | C.C.A. No. 02C01-9608-CC-00265 |
| | ) | |
| vs. | ) | Carroll County |
| | ) | |
| **STATE OF TENNESSEE,** | ) | Honorable Julian P. Guinn, Judge |
| | ) | |
| Appellee. | ) | (Post-Conviction) |
| | ) | |

FOR THE Petitioner:

C. DAVID JONES
P.O. Box 707
150 W. Main St.
Huntingdon, TN  38344-0707

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

ELLEN H. POLLACK
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

ROBERT GUS RADFORD
District Attorney General

ELEANOR CAHILL
Asst. District Attorney General
P.O. Box 663
Camden, TN 38320

OPINION FILED: _____

**AFFIRMED**

CURWOOD WITT
JUDGE

**OPINION**

The petitioner, Joseph Mason Rhinerson, appeals the Carroll County Circuit's Court denial of post-conviction relief. He is serving a life sentence following his conviction of murder in the first degree. In this appeal of his first post-conviction proceeding, he alleges he was denied the effective assistance of counsel based upon his trial counsel's failure to question prospective jurors about their views on homosexuality, failure to move for a mistrial and make pertinent objections, failure to make a timely motion for change of venue, and failure to investigate and present evidence that the petitioner did not fire the bullet that killed the victim. He also alleges his counsel's failure to question the venire about their views on homosexuality denied him fundamental fairness and due process and that he was likewise denied due process because a juror allegedly withheld information about her knowledge of the case and her relationship with the victim's family. Finally, he alleges he was denied a fair trial because of prosecutorial misconduct and the conduct of the victim's supporters during trial. On review of these issues, which we have reordered for purposes of discussion, we affirm the lower court's dismissal of the petitioner's post-conviction petition.

The petitioner was convicted in the Carroll County Circuit Court of first degree murder for the fatal shooting of his neighbor, Daniel Michael Walker. The facts of that case are summarized in this court's opinion on direct appeal. See State v. Joseph Mason Rhinerson, No. 02C01-9105-CC-00104 (Tenn. Crim. App., Jackson, Dec. 18, 1991), perm. app. denied (Tenn. 1992). It suffices for our purposes to note that the murder was committed following an extended period of ill will between the petitioner and members of the victim's household, the extent of which was vigorously contested at trial. The petitioner was represented at trial by Guy Wilkinson, the public defender of the Twenty-Fourth Judicial District, and Buddy Roe, an assistant public defender. Mr. Roe represented the petitioner in his direct appeal to this court. In that appeal, the petitioner's conviction was affirmed.

Permissive appeal was denied by the Tennessee Supreme Court. Thereafter, the petitioner filed a pro se petition for post-conviction relief in which he complained of various errors at trial, constitutional deprivations and ineffective assistance of counsel. Following the appointment of counsel and the filing of an amended petition, a hearing was held, and the Honorable Julian P. Guinn, Carroll County Circuit Court, found the petitioner's claims wholly without merit and denied relief. The petitioner is now before this court in his appeal of that determination.

In post-conviction proceedings, a petitioner has the burden of proving his post-conviction allegations by a preponderance of the evidence. McBee v. State, 655 S.W.2d 191, 195 (Tenn. Crim. App. 1983). A trial court's findings of fact following a post-conviction hearing have the weight of a jury verdict. Breton v. State, 477 S.W.2d 754, 756 (Tenn. Crim. App. 1971). On appeal, those findings are conclusive unless the evidence preponderates against the judgment. Butler v. State, 789 S.W.2d 898, 900 (Tenn. 1990). With that standard of review in mind, we turn to the issues presented.

## I

The petitioner raises several allegations of ineffective assistance of counsel. When a petition challenges the effective assistance of counsel, the petitioner has the burden of establishing (1) deficient representation and (2) prejudice resulting from that deficiency. Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 2066-67 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Deficient representation occurs when counsel provides assistance that falls below the range of competence demanded of criminal attorneys. Bankston v. State, 815 S.W.2d 213, 215 (Tenn. Crim. App. 1991). Prejudice is the reasonable likelihood that, but for deficient representation, the outcome of the proceeding would have been different. Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994). On post-

3

conviction review, there is a strong presumption of satisfactory representation. Barr v. State, 910 S.W.2d 462, 464 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995). Moreover, this court does not view matters of trial strategy or tactics as a basis for ineffective assistance of counsel. See Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1981).

## A

In his first issue pertaining to the effectiveness of counsel, the petitioner complains of his trial counsel's failure to examine the potential jurors during voir dire on their views about homosexuality. At the time of the victim's murder, the petitioner, an adult man, was living in the home of another adult man, Johnny Scott. Apparently, members of the community, including members of the victim's family and possibly the victim himself, believed the petitioner and Mr. Scott were involved in a homosexual relationship. The petitioner alleged at trial he and Mr. Scott were the subjects of ridicule and harassment because of this perception. The basis of his demand for post-conviction relief is that this appearance of homosexuality,[1] allegedly fostered at trial through references and innuendos to the petitioner's "lifestyle," inflamed the jury and tainted its verdict.

In the case at bar, petitioner's trial counsel, Guy T. Wilkinson, testified he decided after some deliberation not to question the venire about their views on homosexuality. He reached this decision because the petitioner "very vehemently denied" that he was homosexual, and he did not think it was a wise strategic decision to call attention to the perception the petitioner was homosexual in light of

---

[1]This court is not entirely clear as to whether the petitioner's position is that the jury may have been biased against him because he is homosexual or because he was merely perceived at the time of trial to be homosexual. His position with respect to his sexual orientation has been inconsistent in the various proceedings; however, it matters not for purposes of our analysis whether he is homosexual or was merely perceived as homosexual.

that denial.

This court is constrained not to second-guess the tactical and strategic choices made by trial counsel absent a showing those decisions were uninformed due to inadequate preparation. Hellard v. State, 629 S.W.2d 5, 9 (Tenn. 1982). Counsel's alleged errors will be judged at the time they were made in light of the facts and circumstances then existing. Strickland, 466 U.S. at 690, 104 S. Ct. at 2066; see Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993). Furthermore, trial counsel will not be found ineffective merely because a different tactic may have produced a different result. Williams v. State, 599 S.W.2d 276 (Tenn. Crim. App. 1980).

In the case at bar, the record reflects that the petitioner had the benefit of well-prepared and experienced counsel. Because the petitioner's counsel considered his approach and decided not to question the venire on the issue as a matter of trial strategy, we will not, with the benefit of hindsight, second-guess that decision. See Cox v. State, 880 S.W.2d 713, 718 (Tenn. Crim. App. 1994).

**B**

The petitioner's second allegation of ineffective assistance of counsel arises from his counsel's pursuit of one line of questioning[2] and failure to make objections to several of the prosecutor's lines of questioning[3] which the petitioner

---

[2]The petitioner's counsel elicited testimony from the petitioner that a friend of the victim's son called the petitioner a "faggot" and the petitioner returned the comment just before the petitioner killed the victim.

[3]This complaint is premised on several passages from the trial transcript which the petitioner argues were "meant to improperly show the jury that the petitioner was an outsider and invader in the neighborhood, . . . was not worthy of belief, . . . deserved to be shot, and most importantly, that he and his homosexual friend casually walked back arm-in-arm after he shot this family man." In addition, the petitioner contends the prosecutor improperly referred to

5

contends were inflammatory and highly prejudicial. Also the petitioner cites his counsel's failure to object or request a mistrial when the victim's fellow Shriners allegedly wore Shriner paraphernalia in a show of solidarity with the victim's family,[4] when the victim's wife allegedly caused an outburst during the petitioner's testimony in which she cried and yelled that the petitioner and his housemate were liars, and when the victim's supporters were loud and disruptive during the trial. Finally, the petitioner contends the cumulative effect of all of these alleged failings deprived him of effective counsel.

The lower court disposed of the allegations that the victim's wife was disruptive, the victim's family and friends verbally abused the petitioner within earshot of the jury, and that the victim's fellow Shriners wore their fraternal hats in the courtroom. It found the victim's wife left the courtroom after bursting into tears, which "was not of particular significance and certainly not unexpected in a trial of this nature." The lower court further found the remaining allegations regarding the actions of the victim's wife and the victim's family and friends were "untrue." The trial court did not address the petitioner's complaints about his counsel's questions on direct exam and failure to object to the prosecution's examination of witnesses, and this court notes the petitioner has raised these issues for the first time in this appeal.

With respect to the issues addressed by the trial court, that the victim's wife called the petitioner and his housemate liars, the victim's family and friends

_____

the petitioner as Mr. Scott's "friend" during his cross-examination of Scott.

[4]At the post-conviction hearing, the petitioner and his father testified the Shriners wore their hats in the courtroom. Mr. Scott testified the Shriners wore their hats in the hallway but had them in their laps while seated in the courtroom. On appeal, the petitioner's complaint is that the Shriners "were seated in the courtroom [and wore] their fraternal hats in the hallway during the trial in a mass demonstration designed to prejudice and intimidate the jury."

**6**

verbally abused the petitioner within earshot of the jury, and the victim's fellow Shriners wore their fraternal hats in the courtroom, we cannot say that the evidence of record preponderates against the lower court's findings. The evidence does not preponderate against the conclusion that these events did not occur. Because the petitioner has failed to establish the truth of these allegations, no further analysis is necessary.

With respect to the petitioner's complaint that the victim's wife caused a disruption when she burst into tears during the petitioner's testimony, the petitioner's trial counsel testified he felt like emotions would be a part of the case and tried to cover this with the jury "in the very beginning." In his experience, "a lot of times when people break down crying and things happen in a case I just think it's better to -- you know, it happened, and let it go and get gone. . . . I would have done something if it was so outrageous that I felt like it was bad." Because the public defender obviously made the decision not to object based on his experience and conscious evaluation of the situation at hand, we will not second-guess his decision. See Cox, 880 S.W.2d at 718. Moreover, the evidence supports the trial court's conclusion that this brief outburst was not significant in the context of the trial, and we fail to see any prejudice which has befallen the petitioner as a result of the victim's wife's brief crying spell in front of the jury. Thus, we agree with the trial court that the petitioner has failed to demonstrate his trial counsel's ineffectiveness in this regard.

Likewise, we find the petitioner is not entitled to relief on the issues presented for the first time on appeal. See Butler v. State, 789 S.W.2d 898, 902 (Tenn. 1990); Ellison v. State, 549 S.W.2d 691, 694 (Tenn. Crim. App. 1976) Moreover, we note that the petitioner's counsel did lodge his objections to at least some of the passages quoted from the trial transcript, and in any event, none of

these newly raised issues deprived the petitioner of his constitutional right to the effective assistance of counsel.

Finally, considering cumulatively all of counsel's alleged shortcomings in questioning, failing to object and failing to move for a mistrial, we see no prejudice on this record. The petitioner's trial counsel was not ineffective in this regard.

**C**

The petitioner's next grievance with trial counsel is that he failed to make a timely motion for change of venue based upon pretrial publicity. The record reflects that no written motion for change of venue was filed, and Attorney Wilkinson first made such motion orally at the conclusion of jury selection. The motion was denied based upon (1) untimeliness, (2) the lack of significant pretrial publicity, (3) the lack of undue jury knowledge about the cause as demonstrated during voir dire, (4) the fact that no potential jurors were challenged by the petitioner for cause, and (5) the selected jurors could be fair. Joseph Mason Rhinerson, slip op. at 9. This issue was raised in the direct appeal, and this court held that the trial court did not abuse its discretion in failing to grant the motion. Joseph Mason Rhinerson, slip op. at 9.

The petitioner and his father testified at the post-conviction hearing that they demanded the public defender make a motion for change of venue at the early stages of the proceedings. Mr. Wilkinson testified he did not believe a change of venue was needed because the publicity surrounding the case was not extensive throughout the county and he believed he could get jurors from parts of the county other than the community where the offense occurred who would not be biased by pretrial publicity or gossip. In the transcript of voir dire, the jurors all acknowledged they could be fair and impartial and set aside any pre-trial information they had read

**8**

or heard about the case.[5] The post-conviction court denied relief, finding that the issue was previously determined and that the petitioner failed to develop significant proof that the jury panel was prejudiced against him or that any familiarity with the victim's family interferred with his right to a fair trial.

As this court has previously recognized, a strategic decision by counsel not to challenge venue is a "valid tactical choice." See, e.g., Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); Lofton v. State, 898 S.W.2d 246, 249 (Tenn. Crim. App. 1994). The record reflects that Attorney Wilkinson considered whether to make an early motion to change venue and made a tactical decision not to do so. As with the other strategic decisions made by Wilkinson in his representation of the petitioner at trial, we will not reevaluate his decision with the benefit of hindsight. See Cox, 880 S.W.2d at 718. Moreover, the post-conviction court noted there was no proof the trial court would have acted differently upon a timely motion for change of venue. See Adkins, 911 S.W.2d 343. The record demonstrates no prejudice to the petitioner because of counsel's failure to file a pre-trial motion for change of venue. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. Thus, the lower court correctly denied relief on this issue.

D

In the petitioner's last allegation of ineffective assistance of counsel,

---

[5]Although most of the jurors had some knowledge of the petitioner's case from reading about it in the newspaper, the voir dire transcript confirms that the jurors' knowledge about the case was extremely limited. To be sure, some of the jurors could not even recall the substance of what they had read about the case. All of the jurors confirmed that they could disregard any previous information they had received about the case and make a determination based on the evidence developed in court. See State v. Harris, 839 S.W.2d 54, 63-64 (Tenn. 1992) (trial court did not abuse its discretion in denying motion to change venue where jurors had limited knowledge of case from reading about it and all indicated they could set aside pretrial information and return a verdict based solely upon the evidence).

he contends trial counsel failed to investigate and present evidence that he did not fire the bullet that killed the victim; rather, someone on the victim's property accidentally shot the victim while attempting to shoot the petitioner. In support of this newly developed theory, the petitioner contends the gun he fired during the fatal confrontation with the victim was loaded with only one type of bullet, while there is evidence another type of bullet may have been recovered from the body of the victim. The evidence developed at trial included the testimony of a Tennessee Bureau of Investigation Crime Laboratory ballistics expert. This expert testified the bullet retrieved from the victim's body had the same characteristics as those which were test-fired at the crime lab from the gun used by the petitioner. The TBI expert could not, however, conclusively determine that the bullet recovered from the victim's body was fired from the weapon used by the petitioner. Significantly, the TBI expert also testified, contrary to the petitioner's housemate's subsequent testimony at the post-conviction hearing, that the gun taken into evidence was loaded with two different types of bullets. The petitioner's father testified at the post-conviction hearing he had done some investigation of the type of bullet his son contends was in the gun and determined that this type of bullet would not be "solid lead" as the TBI expert testified, and further, this type of bullet would not create a "dirty" wound as described in the victim's autopsy report.[6]

The petitioner finds fault with his counsel's failure to discover these facts prior to trial. He further contends his attorney's failure to present the alternative defense is not insulated from our review as a matter of trial strategy because it was not an informed decision made after investigation. However, the petitioner has developed no evidence which would have put the public defender on

---

[6]As we understand the evidence, however, the second type of bullet the TBI expert reported to be in the gun was "solid lead" and would produce a "dirty wound."

notice prior to trial that this avenue was worthy of investigation. The petitioner's father first realized something was wrong when he heard the TBI expert's testimony during the trial. Similarly, the petitioner's housemate did not realize until he reviewed the trial transcripts that there was evidence he had two types of bullets in his gun. Although defense counsel surely had the TBI lab report prior to trial, the petitioner has presented no evidence that the public defender was made aware of his contention there was only one type of bullet in the gun, rather than two. Moreover, the petitioner presented no evidence which would serve to raise a reasonable suspicion with counsel that the matter warranted further investigation. Significantly, Attorney Wilkinson testified the petitioner never raised any question as to whether he shot the victim, and the only real issue for them to deal with was whether the shooting was justified. Mr. Wilkinson testified that he developed the theory of self-defense based on his conversations with the petitioner and the investigation he conducted.[7] Further, Mr. Wilkinson opined that it is ineffective to present a jury with alternative theories of a case.[8]

The lower court found there was no "repeated allegation" the petitioner did not shoot the victim and that self-defense was the only available defense based on the petitioner's statements to counsel and the physical evidence. Further, the lower court found that the petitioner failed to take exception to his counsel's choice of defense after lengthy consultation. Accordingly, the post-conviction court denied

---

[7]The public defender testified his investigation included visiting the area, talking to neighbors and friends, looking for an alleged eyewitness, interviewing the victim's medical providers, investigating the owners of vehicles identified by the petitioner and obtaining prior law enforcement complaints between the petitioner and the Walkers.

[8]We note that the two strategies here in question are inherently inconsistent. In employing a self-defense strategy, the petitioner pursued the theory he justifiably killed the victim. In pursuing the theory he now espouses, he would be required to contend he did not shoot the victim at all, someone else did. It is difficult to imagine a defendant who truly believed the latter abiding by a trial strategy of the former.

relief. We find nothing which preponderates against these findings of the trial court. Moreover, the choice of a defense strategy is inherently tactical and not subject to review where the decision is informed and based on adequate preparation. Hellard, 629 S.W.2d at 9. The record reflects the petitioner's counsel chose the strategy based on consultation with his client and investigation. Having found no evidence which calls into question the lower court's denial of relief on this issue, we must hold that the petitioner is not entitled to relief based on his post-conviction disagreement with his counsel's trial strategy.


## II

The petitioner's next complaint is that he was denied due process because one of the jurors "withheld information about her knowledge of the case and her relationship with the victim's family." The petitioner argues that the alleged dishonesty of Juror Lisa Wall gives rise to the presumption of bias and partiality, and this bias cannot be cured except by new trial.

Challenges to juror qualifications generally fall into two categories at common law -- propter defectum or propter affectum. Partin v. Henderson, 686 S.W.2d 587, 589 (Tenn. Ct. App. 1984). Objections based on general disqualifications, such as alienage, family relationship or statutory mandate are classified as propter defectum and must be challenged prior to the return of the jury verdict. State v. Akins, 867 S.W.2d 350, 355 (Tenn. Crim. App. 1993). On the other hand, objections based on bias, prejudice or partiality toward a party to the proceeding which is shown or presumed are classified as propter affectum. Durham v. State, 182 Tenn. 577, 582, 188 Tenn. 555, 559 (Tenn. 1945). Propter affectum challenges may be made after the return of the jury verdict. State v. Furlough, 797 S.W.2d 631, 652 (Tenn. Crim. App. 1990). The petitioner's challenge falls in the category of propter affectum.

**12**

The party alleging juror bias or partiality bears the burden of proof on the issue.  See State v. Taylor, 669 S.W.2d 694, 700 (Tenn. Crim. App. 1983). When a juror wilfully conceals or fails to disclose information which calls into question her impartiality, a presumption of prejudice arises.  Durham, 182 Tenn. at 584,188 S.W.2d at 559; see Hyatt v. State, 221 Tenn. 644, 646, 430 S.W.2d 129, 130 (Tenn. 1967) (silence on an issue considered a negative response).

The petitioner alleges Juror Wall was dishonest with the court because she failed to reveal that her mother's first cousin was a co-worker and friend of the victim's during his lifetime.  Further, he contends, two of her mother's first cousin's children are friends of the victim's sons and have participated in harassing the petitioner and Mr. Scott.  The petitioner also testified he had seen Juror Wall visiting the victim's home several times.

The petitioner testified Mr. Wilkinson did not consult with him during the jury selection process; however, he offers no explanation of why he did not bring Juror Wall's alleged presence at the victim's home to Wilkinson's attention during jury selection.  Mr. Wilkinson testified the petitioner voiced his satisfaction with the jury, and Wilkinson did not learn of any alleged connection between Juror Wall and the victim's family (other than those revealed in voir dire) until a break in the proceedings when the petitioner's housemate or father belatedly brought the matter to his attention.

The transcript of voir dire memorializes that prior to trial Juror Wall read about the petitioner's case in the newspaper but she did not know any of the parties involved.  She admitted she had maternal relatives in the community where the incident occurred and she had heard about the case through them, although they provided no information beyond what had been in the newspapers.  Further,

**13**

she acknowledged that her maternal relatives probably knew the people involved, but she was not sure of this. She agreed she did not have any preconceived ideas about the petitioner's guilt or innocence and could return a verdict based on the evidence alone. Notably, Juror Wall was not questioned at the post-conviction hearing. The petitioner's post-conviction counsel made an oral motion at the beginning of the hearing for the court to subpoena the jury, and specifically Ms. Wall, which the judge took under advisement "until such a time as [he] hear[d] whatever it is [the petitioner] propose[d] to develop in this case." The petitioner's counsel did not thereafter renew this motion at the conclusion of his proof, and as a result Juror Wall's testimony was not submitted.

The court below found that the issue of jury bias was previously determined in the direct appeal, and in any event, nothing "of significance" was developed to support the petitioner's contention. We begin our analysis by noting that this court has previously considered the issue of jury bias in the context of the motion for change of venue. We did not, however, have before us on direct appeal the allegations that Juror Wall was dishonest with the trial court, although it appears from the record that all the information before us now was known and available to the petitioner at the time of his direct appeal. Under ordinary circumstances, we might well find this issue waived by failure to raise it on direct appeal; however, the state did not raise a waiver defense in its answer to the petition or at the hearing. See Tenn. Code Ann. § 40-30-112 (1990) (repealed 1995). Neither has the state argued waiver in its brief to this court. Although noting the apparent waiver, the trial court considered the issue on its merits. We will do the same. See Coker v. State, 911 S.W.2d 357, 366-67 (Tenn. Crim. App.), perm. app. denied (Tenn. 1995).

The essential issue is whether Juror Wall was dishonest during voir dire. If she was, the petitioner will have raised the presumption of prejudice. After

comparing the evidence presented by the petitioner in the post-conviction hearing with the voir dire portion of the trial transcript, we find that the only conflict is whether Juror Wall personally knew the victim's family. She stated she did not, while the petitioner testified he had seen her at the victim's home on several occasions.[9] The lower court obviously discredited the testimony of the petitioner on this issue, which was its prerogative to do as the finder of fact. We cannot say that the evidence preponderates against this finding. Thus, the petitioner has failed to establish any facts which support a denial of due process, and the trial court's determination on this issue must be affirmed.

III

Next, in an issue related to I(A) above, the petitioner contends his counsel's failure to question the venire about their views on homosexuality denied him his constitutional guarantees of fundamental fairness and due process. The caselaw cited by the petitioner in his brief, however, deals with ineffective assistance of counsel and the trial court's failure to question jurors on the issue of racial prejudice. The petitioner has cited no authority for the proposition he advances, and we have already determined his counsel was not ineffective in this regard. Having found no error of counsel, we fail to see how the petitioner has suffered any other constitutional injury. Moreover, as we found on direct appeal, we fail to find evidence preponderating against the trial court's finding that the jury had any knowledge or was in any way influenced by any purported allegation the petitioner was homosexual. Joseph Mason Rhinerson, slip op. at 9; accord State v. McMullen, 20 Kan. App. 2d 985, 894 P.2d 251 (defendant not entitled to new trial absent showing that undisclosed homosexual bias of one juror affected the juror's

---

[9]The petitioner contends in his brief that Mr. Scott likewise testified he had seen Juror Wall at the victim's home. Contrary to the petitioner's citations to the post-conviction hearing transcript, the record does not bear out his assertion.

15

ability to return a fair and impartial verdict), review denied (Kan. 1995). Accordingly, we affirm the trial court's denial of relief on this ground.

IV

Finally, we address an issue of general due process of law which the petitioner raises in his brief. He captions the issue as a matter of ineffective assistance of trial counsel arising from the failure to move for a mistrial or otherwise object in response to several occurrences at trial: (1) the state's improper cross-examination of the petitioner and another defense witness; (2) an emotional outburst in the courtroom by the wife of the victim; (3) the victim's family and friends verbally abusing the petitioner in view of the jury; and (4) the presence in the courtroom of Shriners in fraternal garb.

We have dealt with the effective assistance of counsel issues above in section I(B). However, although the petitioner captions the above four issues as a matter of the ineffective assistance of counsel, they are transmogrified in the petitioner's brief into a complaint about the free-standing denial of due process of law in the form of the abridgment of his right to a fair trial.

The court found that, with the exception of the alleged improper questioning by the prosecution, the cited events did not occur during the trial. The record on this appeal does not preponderate against this finding, and we are precluded from disturbing these findings of the post-conviction court.

The remaining issue is the alleged prosecutorial misconduct. We note that the petitioner has not argued in any earlier stage of these proceedings that the prosecutor's conduct in cross-examining the petitioner and another trial witness

16

abridged his right to a fair trial. For this reason, we could decline to address this issue raised for the first time on appeal. <u>See</u> <u>Butler</u>, 789 S.W.2d at 902; Tenn. R. App. P. 36. However, the record affords us an opportunity to review the merits of the petitioner's due-process/fair-trial claim, and we elect to consider the issue.

The prohibition of certain prosecutorial misconduct is grounded in the constitutional assurance of a fair trial, perhaps the broadest and most fundamental manifestation of general due process. <u>Smith v. Phillips</u>, 455 U.S. 209, 219, 102 S. Ct. 940, 947 (1982). <u>See</u> <u>Coker v. State</u>, 911 S.W.2d 357, 366 (Tenn. Crim. App.), <u>perm. app. denied</u> (Tenn. 1995); <u>State v. Hicks</u>, 618 S.W.2d 510, 516 (Tenn. Crim. App. 1981). Within the context of the rules governing our review of the dismissal of a post-conviction petition, discussed <u>supra</u>, the general test to be applied to instances of prosecutorial misconduct is "whether the improper conduct could have affected the verdict to the prejudice of the defendant." <u>Harrington v. State</u>, 215 Tenn. 338, 340, 385 S.W.2d 758, 759 (1965). We have previously identified five factors which should be considered in making this determination:

> 1. The conduct complained of, viewed in context and in light of the facts and circumstances of the case.
>
> 2. The curative measures undertaken by the court and the prosecution.
>
> 3. The intent of the prosecutor in making the improper statement.
>
> 4. The cumulative effect of the improper conduct and any other errors in the record.
>
> 5. The relative strength or weakness of the case.

<u>Judge v. State</u>, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

In the case now before us, the petitioner complains of comments and innuendos made by the prosecutor during cross-examination of defense witnesses at trial. To summarize, the petitioner objects to innuendos by the prosecutor that

**17**

the petitioner was an "outsider and invader in the neighborhood," in the petitioner's words; that he was untruthful; that dogs which cowed during the altercation showed more sense than did the petitioner; that he was guilty of conduct that might have provoked an assault; and that he and his homosexual friend casually walked away arm-in-arm after the petitioner shot the victim. The petitioner also complains that the prosecutor referred to the petitioner as Mr. Scott's "friend" during the cross-examination of Scott.

Upon our review of the record, including the transcript of the proceedings at the petitioner's trial, we find no discernible misconduct of the prosecutor in cross-examining the petitioner and witness Scott. The cross-examination was vigorous, and during the cross-examination of petitioner the conversation between the prosecutor and the petitioner was contentious. In the overall context of the cross-examination and of the courtroom atmosphere, the prosecutor's conduct was not improper. The cross-examination may have been detrimental to the petitioner, but in our adversarial system, cross-examination of a witness, especially a party-witness, is calculated to damage the proponent's case. In the absence of a threshold instance of misconduct, we have no occasion to consider the factors enumerated in Judge, see Coker, 911 S.W.2d at 369 (prosecutor's actions which we deemed to be proper were discarded and the Judge factors were not applied), nor do we need to assess the effect on the verdict. Any possible effect is permissible and incidental to our adversarial system of criminal justice. Therefore, we conclude that the record does not support the petitioner's claim that his right to a fair trial was abridged by prosecutorial misconduct.

In conclusion, the appellant has failed to demonstrate that the evidence preponderates against the trial court's dismissal of his post-conviction petition. The judgment of the trial court is affirmed.

**18**

_____

CURWOOD WITT, JUDGE

CONCUR:

_____

JOSEPH B. JONES, PRESIDING JUDGE

_____

GARY R. WADE, JUDGE