Verlin Monroe ELLISON, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Dec. 10, 1976.

Certiorari Denied by Supreme Court
March 14, 1977.

Roger A. Stetter and Robert Tucker, Legal Aid Clinic, Knoxville, Tenn., for appellant.

R. A. Ashley, Jr., Atty. Gen., Robert L. Jolley, Jr., Asst. Atty. Gen., Nashville, Tenn., Herbert S. Moncier and Ralph E. Harwell, Asst. Dist. Attys. Gen., Knoxville, Tenn., for appellee.

## OPINION

TATUM, Judge.

The appellant was convicted of second degree murder of his wife in the Criminal Court of Knox County and his punishment was fixed at life imprisonment in the State Penitentiary. We affirm the judgment of conviction.

The sufficiency of the evidence was not assailed, but we will summarize the facts to aid in discussing the assignments: After attending a family outing, the appellant and his wife, Vicki Jones Ellison, retired at approximately 11:00 o'clock P.M., on Sunday, June 22, 1975. The appellant's cousin, Patricia (Patti) Cunningham, age 15 years, spent the night with them at their trailer, at the appellant's instigation. The appellant had been drinking that day.

In the very early hours of the next morning, Patti Cunningham was awakened by an argument between the appellant and his wife. She could only distinguish the victim, Mrs. Ellison, saying, "No Butch". She again slept and was awakened by the deceased going to the bathroom. When the deceased returned to the bedroom, she heard something "falling on the bed". She then heard a sound like "hitting plastic" that continued for five or ten minutes. After this, the appellant came into Miss Cunningham's bedroom nude and grabbed her by the throat, raped her and threatened to kill her. He then forced her to the kitchen where she looked at the clock and learned that it was 3:00 o'clock A.M. He then walked her back into the bedroom and told her that the deceased was at "Jackie Hunley's house". He threatened to kill her if she told anyone about the rape. He forced her to bed with him and then he went to sleep. After he fell asleep, at about 4:30 A.M., Miss Cunningham left, noting that the deceased's bedroom door was closed. She went to the deceased's parents' home which was on the same premises as the appellant's trailer and told deceased's parents about the argument between the appellant and the deceased. She did not tell them about the attack upon her.

At 5:00 o'clock A.M., the deceased's father, Herman Jones, went to the trailer to awaken the deceased for work. The appellant came to the door completely nude. When Mr. Jones came into the trailer, the appellant went to the deceased's bedroom and spoke to the deceased, but she did not answer him. The appellant came back to the living room wearing trousers and stated

that the deceased was getting up to go to work. At approximately 5:15 A.M., the appellant came to the home of the deceased's parents and asked the deceased's mother to talk with the deceased about their marital problems.

At about 6:00 o'clock A.M., the appellant returned to the home of the deceased's parents and told Patti Cunningham that the deceased wanted to see her. She accompanied him to the trailer where he bound her arms and legs, after telling her, "You thought you would get away from me, didn't you". He then brought the deceased's sister, Sandra Jones, age 13, to the trailer and bound her and then he brought the deceased's brother, Ronnie Jones, age 10, to the trailer and bound him. He then put Sandra Jones in the trunk of his car and he put Patti Cunningham in the front seat. He drove the car to a deserted area, close to a stream, when he put Patti Cunningham in the trunk of the car and took Sandra Jones some distance from the car and raped her. The defendant told Sandra Jones that the deceased was with an old boyfriend. At about 11:00 A.M., on Monday, the appellant took the two girls to a point near his grandmother's home and left them. He then went to Mississippi where he remained for 3 days before returning to Tennessee and surrendering to police.

The deceased's nude body was discovered by her brother, Gary Jones, age 16, in the master bedroom of the trailer between 8:00 o'clock and 9:00 o'clock A.M., on Monday, June 23. Her time of death was fixed at between 1:00 o'clock A.M. and 5:00 o'clock A.M. on June 23. She had been suffocated with a bed sheet.

In his first assignment of error, the appellant claims that the Trial Court erred in denying his motion, made at the close of the State's case in chief, for an evidentiary non-jury hearing. The reason for the proposed hearing was to determine whether the appellant could be cross-examined for impeachment purposes concerning his 1968 second degree murder conviction. The appellant desired the advance ruling to assist him in deciding whether to testify in his own behalf. The State's brief does not respond to the merits of the appellant's contention. At the conclusion of the State's proof in chief, the appellant's counsel informed the Court that appellant pled guilty in 1968 to second degree murder. The appellant desired to introduce evidence to the effect that prior to pleading guilty in 1968, he had made an invalid, extra-judicial confession. The defense contended that the confession was made without benefit of counsel and contrary to instructions from his father and that this invalid confession induced his guilty plea. This was the only ground alleged in support of the appellant's motion during the trial of the case. The record is void of any allegations that appellant was not represented by competent counsel when he entered the guilty plea in 1968. Under the facts as related to the Trial Judge by counsel at trial, the learned Trial Judge correctly informed counsel that if the appellant testified, the Court would permit cross-examination as to the appellant's prior conviction if the question was properly framed and properly presented at the proper time. The appellant did not testify. We think that the learned Trial Judge was correct.

In *Recor v. State,* 489 S.W.2d 64, 68 (Tenn.Cr.App.1972), this Court held:

"Ground 3 complains that an illegally obtained confession was used against him. On the assumed premise that his guilty plea was understandingly and voluntarily entered, this allegation states no possible basis for relief, because the question was thereby waived. *Reed v. Henderson,* (6th Cir. 1967), 385 F.2d 995; *Trolinger v. Russell,* 1 Tenn.Cr.App. 525, 446 S.W.2d 538."

See also, *Crum v. State,* 530 S.W.2d 103 (Tenn.Cr.App.1975); *Parker v. State,* 492 S.W.2d 456 (Tenn.Cr.App.1972); *Ray v. State,* 480 S.W.2d 919 (Tenn.Cr.App.1972).

The guilty plea waived all nonjurisdictional and procedural defects and constitutional infirmities. The facts given the learned Trial Judge, if correct, would not justify exclusion of the previous conviction for impeachment purposes.

In a motion in limine filed by appellant, he assigns as the ground for the exclusion of the impeaching evidence of the 1968 conviction that it is "so remote in time as to be irrelevant to the issues in this case". In *State v. Morgan,* 541 S.W.2d 385 (Tenn. 1976), the Supreme Court stated that a conviction within ten years prior to trial is not too remote as to be irrelevant for impeachment purposes. There was no merit to the written motion in limine.

The appellant relies upon *Loper v. Beto,* 405 U.S. 473, 92 S.Ct. 1014, 31 L.Ed.2d 374 (1972), in which the United States Supreme Court held that a prior conviction which was obtained against the accused without benefit of counsel, or waiver of counsel, was not admissible for purposes of impeachment; and, further, that the burden of proof as to the invalidity of the prior conviction was upon the defendant. *Loper v. Beto, supra,* is not applicable in this case.

Moreover, there is no authority in this state to support the appellant's contention that a trial should be interrupted in order to allow a collateral attack upon a prior trial with a hearing to determine all of the constitutional questions that might be raised concerning the prior trial. It was the defendant's option to testify if he so desired. He declined to testify, as was his right. If he had chosen to testify, he would have been subject to the same methods of cross-examination as would any other witness. *Gray v. State,* 194 Tenn. 234, 250 S.W.2d 86 (1952).

The appellant, in his brief, charged grounds for the exclusion of the evidence of the prior conviction which were not mentioned during the trial, including the charge that appellant had incompetent counsel. The Trial Judge cannot be put in error for failure to act on matters mentioned for the first time in an appellate brief. *See, Kirby v. State,* 214 Tenn. 296, 379 S.W.2d 780 (1964); *Pruitt v. State,* 3 Tenn.Cr.App. 256, 460 S.W.2d 385 (1970).

Moreover, to invoke a procedural rule that permits the interruption of a trial on a motion during the trial, collaterally attacking a previous conviction, without prior notice to the State, would deny the State any opportunity to defend the attack. The prosecuting attorney would not be given the opportunity to prepare for the collateral issue, conduct appropriate investigation, subpoena witnesses or otherwise meet the defendant's proof. *State v. Morgan, supra,* did not intend such procedure.

The preferred procedure for testing the validity of a prior conviction is to institute a separate proceeding for that purpose as provided under T.C.A. § 40–3801 *et seq.* This procedure is authorized even when a petitioner has served his sentence and is no longer on parole, if there is a possibility that any collateral legal consequence will be imposed on the basis of the challenged conviction. *Holt v. State,* 489 S.W.2d 845, 847 (Tenn.Cr.App.1972); *Daugherty v. State,* 4 Tenn.Cr.App. 355, 470 S.W.2d 865 (1971).

Assignment No. I is overruled.

In separate assignments, the appellant complains of the action of the Trial Judge in admitting evidence of the rape of Sandra Jones and Patricia Cunningham.

The appellant introduced an expert witness who expressed the opinion that the deceased died of acute heart failure from the toxic effects of inhalation of freon propellant contained in a bottle of cologne found at the foot of her bed; that she fainted after inhaling the fumes and fell back onto the bed and that her tongue and jaw caused partial obstruction of the airway resulting in a combination of asphyxial death associated with this mechanism together with the precipitating cause of inhalation of the toxic freon. The appellant's expert also testified that in his opinion, a sheet was used by the deceased in a tent-like fashion to contain the vapors of the cologne and that the deceased had been using the bottle as a dildo for self sex-gratification.

The State's evidence was that if the bottle had been manipulated in deceased's vagina, this would have occurred after she lost consciousness.

We have reviewed many cases touching on the question of the admissibility in evidence of other crimes. The Supreme Court, in *Carroll v. State,* 212 Tenn. 464, 370 S.W.2d 523 (1963) summarized the prevailing law in Tennessee:

"The general principle to be collected from these, and other authorities, is that evidence of another crime or crimes than that charged in the indictment and for which defendant is on trial, is not admissible unless such evidence is relevant to prove his guilt of that crime. The test of relevancy is furnished not by law, but by logic and general experience (Thayer, Preliminary Treatise on Evidence (1898), 264–266). Morgan, Basic Problems of Evidence (1961), 183–194; Trautman, Logical or Legal Relevancy—A Conflict in Theory, 5 Vand.L.Rev. 385, 403–410.

It is generally agreed that evidence of other crimes by defendant is not admissible merely to prove his disposition to commit such a crime as that on trial; but such evidence is admissible when it is relevant to prove some other material issue on trial; for instance, when it tends to establish (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme or plan for commission of two or more crimes so related to each other that proof of one tends to establish the others; and (5) the identity of defendant on trial. *Morgan,* supra; *Harris v. State,* [*Harris v. State,* 189 Tenn. 635, 227 S.W.2d 8] supra; *Woodruff v. State,* [*Woodruff v. State,* 164 Tenn. 530, 51 S.W.2d 843] supra.

The question of the admissibility of evidence of other crimes to prove defendant's guilt of the crime on trial underwent elaborate consideration in *Mays v. State,* [*Mays v. State,* 145 Tenn. 118, 238 S.W. 1096] supra. There, the Court said:

'Evidence which is relevant to defendant's guilt is not inadmissible because it proves or tends to prove him guilty of another and distinct crime. It frequently happens that two distinct offenses are so inseparably connected that the proof of one necessarily involves proving the other, and in such a case on a prosecution for one evidence proving it cannot be excluded because it also proves the other. Evidence of another and distinct crime is admissible if it was committed as a part of the same transaction and forms part of the *res gestae.*

\*     \*     \*     \*     \*     \*

'It is also admissible, where the crime charge[d] is a part of a plan or system of criminal action, to offer evidence of other crimes near to it in time and of similar character, to show the knowledge and intent of the accused, and that the crime with which he is charged was not the result of accident or inadvertence.'

We think the Trial Judge properly admitted in evidence the testimony of the witness Mrs. Sneed as to the circumstances of defendant's breaking and entering her apartment, his threats of her with the knife, his forcing her to engage in sexual perversion with him, his criminal assault on her with intent to force her to have sexual intercourse with him, and his arrest by the police in her apartment. These circumstances were admissible and relevant as tending to prove defendant's guilt of the crime specified in the indictment and for which he was on trial." 212 Tenn. 464, 370 S.W.2d 523, at 529.

This Court, in *Coffman v. State,* 3 Tenn. Cr.App. 634, 466 S.W.2d 241, 245 (1970) stated the "single transaction" rule as follows:

"So, the true rule unquestionably settled is that where the acts are all so closely related, in point of time and place, and so intimately associated with each other that they form one continuous transaction, the whole transaction may be shown, the reason being that all such acts are admissible as necessary parts of the proof of the entire deed, or as inseparable elements of the deed or as concomitant parts of the criminal act. [citations omitted]"

In *Canady v. State,* 3 Tenn.Cr.App. 337, 461 S.W.2d 53, 57–58 (1970), this Court,

citing UNDERHILL, CRIMINAL EVIDENCE § 191 (4th ed. 1956) discussing "res gestae" stated:

"Res gestae is from the Latin meaning 'things done', and includes the circumstances, facts and declarations incidental to the main fact or transaction, necessary to illustrate its character, and also includes acts, words and declarations which are so closely connected therewith as to constitute a part of the transaction. The expression, res gestae, as applied to a crime, means the complete criminal transaction· from its beginning or starting point in the act of the accused until the end is reached. What in any case constitutes the res gestae of a crime depends wholly on the character of the crime and the circumstances of the case.

The rule of res gestae under which it is said that all facts which are a part of the res gestae are admissible, is a rule determining the relevancy and not the character or probative force of the evidence. If the court determines that the fact offered is a part of the res gestae, that fact is then relevant. Relevancy is always a judicial question to be determined according to the issue which is to be tried. Taking the main facts which are embraced in the commission of any crime and which are essential to be proved, it will be found, in most instances, that they are connected with others which are not essential to be proved, but which tend more or less to prove those facts which are to be proved. Every occurrence which is the result of human agency is more or less implicated and involved with other occurrences. One event is the cause or result of another, or two or more events or incidents may be collaterally connected or related. Circumstances constituting a criminal transaction which is being investigated by the jury, and which are so interwoven with others, and with the principal facts which are at issue that the[y] can not be very well separated from the principal facts at issue without depriving the jury of proof which is necessary for them to have in order to reach

a direct conclusion on the evidence, may be regarded as res gestae. . . ."

In *Bivens v. State,* 4 Tenn.Cr.App. 580, 474 S.W.2d 431, 435 (1971), this Court said: ". . . In substance, 'res gestae' may be capsuled as to what is relevant. There is no set formula to measure what is res gestae, but it depends upon the facts and circumstances found in the record and in the final analysis addresses itself to the discretion of the trial court. Where it is doubtful, it should go to the jury. . ."

The authorities all agree that each case must be decided on its own facts. *Canady v. State, supra; Shelton v. State,* 3 Tenn.Cr. App. 310, 460 S.W.2d 869 (1970).

We think that the evidence of appellant's conduct after the death of his wife, including the rape of the two teenage girls, was admissible for many reasons. It tended to show that his wife's death was not by mistake or accident as contended by him. Human experience teaches that such conduct is not in congruity with a theory that his wife lost her life by mistake or accident. An innocent person whose wife had lost her life as theorized by appellant would not likely leave her body in bed without reporting the circumstances and fact of her death and go on a sex escapade of this kind, telling the rape victims that his wife was visiting elsewhere.

The appellant's conduct under the facts of this case tended to establish a common scheme or plan for commission of more crimes so related to each other that proof of one tends to establish the others. There was evidence upon which the jury could find that the appellant suffocated his wife by a sheet and that after she lost consciousness, he gratified himself sexually by manipulating the bottle in her vagina and as a continuation of the same sex escapade, gratified himself sexually by raping the two girls. For the same reason, the two rapes indicated a sexual motive for the crime of murder.

Further, we think that under the facts of this case, the conduct of the defendant in committing the two rapes was a part of the

same transaction with the murder and formed a part of the *res gestae.*

Assignments II and V are overruled.

■ The appellant complains that he was not furnished a copy of a pre-trial statement given by the witness, Patricia Cunningham, to the Assistant District Attorney General, and that a sealed copy of the statement was not made a part of the record by the Trial Judge in order to facilitate appellate review.

The appellant made motions prior to and during the trial of the case, asking that he be furnished the statement of the witness, Patricia Cunningham. The motions were based upon the holdings in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967). In its reply brief, the State cites T.C.A. § 40–2044 (the Tennessee discovery statute) and does not answer the appellant's contentions. The State's brief is of no benefit as the appellant concedes that he is not entitled to the statements by virtue of T.C.A. § 40–2044.

The appellant stated that he had "some information that we have that she made certain allegations at the outset of this case which will be inconsistent with her testimony". The appellant did not characterize the "information" or give any specifics with regard to it. Before and after the witness testified, the District Attorney General stated that he had made appellant's counsel acquainted with the facts in his file and that the witness did not testify in contradiction of the statement that she had given him. The District Attorney General did state that the witness did not at first tell the police officers that she had been raped, but the witness was questioned on this subject during her cross-examination and she readily admitted that she withheld this information from the police officers for a time. There is no claim that the prosecution suppressed any evidence favorable to the appellant, which was material either to his guilt or to his punishment. The District Attorney General having assured the Court that the statement of the witness was not contradictory to her testimony, we find no fault in the Trial Court's denial of the motion to require Patricia Cunningham's statement to be given to the appellant. *See, United States v. Conder,* 423 F.2d 904 (6th Cir. 1970); *Williams v. State,* 491 S.W.2d 862 (Tenn.Cr.App.1972). There is no authority supporting the appellant's contention that the statement be made a part of the record in this case. The case was tried prior to the enactment of Chapter 628, Public Acts of 1976.

We commend defense counsel upon their thorough and well-written brief. We applaud their efforts on behalf of their client, but we must affirm the judgment of the Criminal Court of Knox County.

WALKER, P. J., and DUNCAN, J., concur.