IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

FILED

April 29, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| DELPHIA M. GREENMAN, | ) | ANDERSON CIRCUIT |
| | ) | C.A. NO. 03A01-9709-CV-00404 |
| | ) | |
| Plaintiff-Appellant | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | HON. JAMES B. SCOTT, JR. |
| | ) | JUDGE |
| BYRON HUTCHINS, | ) | |
| | ) | |
| Defendant-Appellee | ) | |
| | ) | |
| | ) | REVERSED AND REMANDED |
| | ) | |

CHRISTOPHER VAN RIPER, Stuart & Van Riper, Clinton, for Appellant.


PAUL E. DUNN, CANDIS D. LASLEY, Dunn, MacDonald & Coleman, Knoxville, and ROGER L. RIDENOUR, Ridenour, Ridenour & Fox, Clinton, for Appellee.


O P I N I O N


McMurray, J.


In this case, we are asked to review the propriety of the action of the trial court in directing a verdict in favor of the defendant, Byron Hutchins. The plaintiff, Delphia Greenman,

alleged in her complaint that the defendant, Byron Hutchins, was the driver of a truck in which she was a passenger. She further alleged that as a result of his negligence the truck was involved in an accident in which she was injured.

A jury was empaneled and the case came on for trial before a jury. At the trial, the defendant presented evidence that the plaintiff had earlier pled guilty to a charge of reckless driving arising from the same accident. The trial court held that because of her guilty plea, the plaintiff was judicially estopped from asserting that the defendant was the driver of the truck at the time of the accident. The trial court directed a verdict for the defendant. This appeal resulted. We reverse the judgment of the trial court and remand the case to the trial court.

Our standard of review of a directed verdict is well-established:

> When deciding a motion for directed verdict, both the trial court and the reviewing court on appeal must look to all the evidence, take the strongest legitimate view of the evidence in favor of the opponent of the motion, and allow all reasonable inferences in favor of that party. The court must discard all countervailing evidence, and if there is then any dispute as to any material fact, or any doubt as to the conclusions to be drawn from the whole evidence, the motion must be denied. Tennessee Farmers Mut. Ins. Co. v. Hinson, 651 S.W.2d 235 (Tenn.App.1983). A directed verdict cannot be sustained if there is material evidence in the record which would support a verdict for the plaintiff under any of the

2

theories plaintiff has advanced. <u>Wharton Transport Corp.</u>
<u>v. Bridges</u>, 606 S.W.2d 521 (Tenn.1980).

<u>Hurley v. Tennessee Farmers Mut. Ins. Co.</u>, 922 S.W.2d 887, 891
(Tenn.App.1995).

At trial, plaintiff began her proof by presenting her own testimony.  At the close of her testimony, but before her proof in chief had been concluded, the defendant asked the court for permission to call a witness, Judge Jennings Meredith, Judge of the General Sessions Court for Anderson County.  Judge Meredith is the Judge before whom the plaintiff purportedly entered a plea of guilty to the reckless driving charge referred to above.  The trial court permitted the defendant to call Judge Meredith, and after hearing his testimony, which was taken out of the jury's presence, directed a verdict for the defendant on the grounds that the plaintiff was judicially estopped to assert that the defendant was driving the truck at the time of the accident.  The issue before this court is whether the trial court was correct in its application of the doctrine of judicial estoppel.

Plaintiff testified that at the time of the accident, she and the defendant were romantically involved.  On the night of the accident, the defendant awakened her sometime after midnight and asked her to go with him to get some beer and cigarettes.  She testified that she fell asleep in the passenger's seat and was awakened by "being jostled all over the front of the truck."  She

3

looked over at the defendant and saw that he was asleep at the wheel, and screamed to wake him. The truck went out of control. The next thing she could remember was lying on the ground, and the defendant standing above her saying that "it was going to be okay; he was sorry."

Plaintiff was in the hospital between three weeks and a month. She testified that she suffered serious memory loss and that her brother had to introduce himself to her at the hospital. Initially, she claimed to be unable to remember anything about the accident. She testified that approximately six or seven months after she left the hospital, she began recovering her memory in "bits and pieces." She stated that during this time, "I remember when I spoke with [defendant] or wrote anything out and questioned him about the accident, he would get angry. He would get evasive. He would tell me that I was driving."

Approximately two weeks after she was discharged from the hospital, plaintiff learned that there were criminal charges pending against her resulting from the accident. The record in this case includes a warrant purporting to charge her with driving under the influence of an intoxicant.

The warrant is unsworn, is not signed either by the officer preparing the warrant or a magistrate. It is questionable as to

4

whether the warrant states an offense (as required by T.C.A. § 40-6-208 and Rule 3, Tennessee Rules of Criminal Procedure.)[1] A pre-printed item on the form has been marked as follows with the word "blood" written in: "20 ☒ DUI BAC _Blood_ ." Under the narrative section of the warrant the following is written: "Subject involved in a wreck. Subject had a [sic] odor of a [sic] alcoholic beverage about her. Blood drawn." There is a judgment, reflected on the warrant, finding the plaintiff here guilty of reckless driving along with a notation which states, "amend to reckless driving; def's B.A.T. .03, no signs of drugs." In the space provided for the "violator's signature" if a citation is issued is printed "jailed." A waiver of the defendant's (plaintiff here) constitutional rights appears on a separate document introduced into evidence in this case.[2] That document provides in part: "If you understand all these rights, [constitutional rights] you wish to plead guilty, then you may sign a waiver of these rights. If you do sign a waiver of these rights then you are giving up forever the right to complain that you did not understand your rights." The document further provided the following: "I acknowledge that I have been advised of the above rights, and I understand them. I

---

[1]Rule 3, T.R.Cr.P., provides:

**Rule 3. The Affidavit of Complaint.** — The affidavit of complaint is a written statement alleging that a person has committed an offense and alleging the essential facts constituting the offense charged. The affidavit of complaint shall be made upon oath before a magistrate or a neutral and detached court clerk who is capable of the probable cause determination required by Rule 4.

[2]This apparently is a generic document which is used by the trial judge in the General Sessions Court to advise multiple defendants in open court simultaneously pursuant to the direction found in State v. Neal, 810 S.W.2d 131 (Tenn.1991). (Overruled on other grounds, See Blankenship v. State, 858 S.W.2d 897 (Tenn.1993)).

hereby knowingly, voluntarily and freely give up said rights, except the right to a lawyer if I have one and I plead guilty." This acknowledgment was signed by the plaintiff here. There is also the signature of a lawyer purporting to represent Ms. Greenman. It appears to be disputed, however, as to whether the plaintiff was in fact represented by counsel at the time the guilty plea was entered. Further, there is no written guilty plea as required by T.C.A. § 40-1-109 since no charge is specified in the document containing the purported waiver. The document does refer to the warrant noted above, however, and as we have noted, it is questionable that the warrant states an offense. The document does have the punishment for a Class B misdemeanor written in but does not specify the offense with which the defendant is purportedly charged. In sum and substance, the warrant, absent the amendment, lends little evidence to support a conviction, even on a plea of guilty. The amendment appears to have been written on the warrant by an assistant Attorney General on the same day that the guilty plea was entered and no facts constituting the offense of "reckless driving" are alleged as required by Rule 3, T.R.Cr.P. There is no explanation in the record as to how the amendment came about.

A few weeks after her hospital discharge, the plaintiff appeared in court as a result of the issuance of the warrant. She testified as follows regarding her physical and mental condition at that time:

6

Q:   Let me ask you this question.   What was your condition at the time that you went to court?

A:   I had just had surgery and I was on a large dose of pain medication.

Q:   What was it?

A:   Percocets; two every two to three hours.

Q:   Was that prescribed just for the surgery that you had had or for--

A:   For all of the pain.   Overall condition; bones.   I had broken ribs, punctured lungs.

            *           *           *           *

Q:   And are you saying you were on pain medication that prevented you from knowing what you were doing?

A:   Yes.   I was in a lot of pain.   It was like three weeks after.   I shouldn't have been there.   It should have been postponed until a later date. [Defendant] hired his friend, Terry Webber, to represent me.

            *           *           *           *

Q:   Now, just so the jury understands, when you went to court on that occasion, how did you feel physically?

A:   I was in an excruciating amount of pain.   They had to get me out of my hospital bed to come down there.   I had only been out of the hospital for a few weeks.   I had a sling on my shoulders, like a back brace, that was holding my shoulders together in place, and a sling on my right arm.   As you notice from that, I could barely write my signature.   I was tired, I didn't want to be there. I didn't feel like I should have had to have been there. All I wanted to do was go home.   My medication was running out and I was in a lot of pain.


Judge Meredith testified that he did not place the plaintiff under oath before explaining her rights and accepting her guilty

plea.  Plaintiff argues that in order for judicial estoppel to apply, a contradictory statement or position taken in prior litigation must have been made under oath.  Defendant takes the position that the prior inconsistent statement need not have been made under oath.

Plaintiff relies upon a line of Tennessee cases which contain language strongly suggesting that in order to be judicially estopped from taking an incompatible position with a position taken in prior litigation, the prior statement or position must have been made under oath.  In this regard, Tennessee courts have stated the following:

> The term "judicial estoppel" as used in our reports indicates particularly "that class of estoppels arising from sworn statements made in the course of judicial proceedings generally in a former litigation ... ."  "The distinctive feature of the Tennessee law of judicial estoppel (or estoppel by oath) is the expressed purpose of the court, or broader grounds of public policy to uphold the sanctity of an oath.  The sworn statement is not merely evidence against the litigant, but (unless explained) precludes him from denying its truth.  It is not merely an admission but an absolute bar."

Terox Corp. of America v. Carr, 376 S.W.2d 735, 738 (Tenn.App.1964), citing Sartain v. Dixie Coal & Iron Co., 266 S.W. 313, 318 (Tenn.1924).

> Under the doctrine of "judicial estoppel," where a person states under oath in prior litigation, "either in pleadings or testimony, that a fact is true, she will not be permitted to deny that fact in subsequent litigation."  Cardin v. Campbell, 920 S.W.2d 222, 223-24 (Tenn.App.1995).  Principles of judicial estoppel may also prevent a party from changing a legal position asserted in prior litigation, provided the position was

8

> asserted in a sworn pleading. <u>Layhew v. Dixon</u>, 527
> S.W.2d 739, 741 (Tenn.1975). Where the previous plead-
> ing was not sworn, however, and represented "no more
> than the statements of position of the parties to that
> action," estoppel principles do not apply because
> "judicial estoppels are not favored and ordinarily do
> not arise out of mere unsworn pleadings." <u>Id</u>.

<u>Beem v. Beem</u>, 1996 WL 636491, No. 02A01-9511-CV-00252 (Tenn. App. Nov. 5, 1996).

> Under the doctrine of judicial estoppel as followed
> in a long line of cases in this state, no showing of
> prejudice is necessary.  ... but in order for the
> judicial estoppel to apply, the party against whom the
> estoppel is urged must have made a statement of fact
> under oath that he or she later seeks to contradict.

<u>Werne v. Sanderson</u>, 1997 WL 119522, No. 02A01-9510-CH-00216 (Tenn. App. March 18, 1997).

Although the language employed in these cases suggests a requirement that the prior contradictory statement be made under oath, there is also a line of Tennessee cases citing and applying the following principle, first articulated in <u>Stearns Coal & Lumber Co. v. Jamestown R. Co.</u>, 208 S.W. 334 (Tenn.1919):

> While the law of judicial estoppel is ordinarily
> applied to one who has made oath to a state of facts in
> a former judicial proceeding which in a later proceeding
> he undertakes to contradict, yet it is frequently
> applied, where no oath is involved, to one who under-
> takes to maintain inconsistent positions in a judicial
> proceeding.

<u>Id</u>. at 334; <u>Sartain v. Dixie Coal & Iron Co.</u>, 266 S.W. 313, 318 (Tenn.1924); <u>Jetton v. Nichols</u>, 8 Tenn. App. 567, 576 (1928); <u>Allen v. Neal</u>, 396 S.W.2d 344, 346 (Tenn.1965); <u>Bubis v. Blackman</u>,

435 S.W.2d 492, 498 (Tenn.App.1968); Moore v. Mundy, 1990 WL 107494, No. 01A01-9002-CH-00071 (Tenn. App. Aug. 1, 1990).

In the case of Hicks v. Andrew Johnson Bank, Judge (now Chief Justice) Anderson, addressing whether an oath is required under judicial estoppel, cited Stearns, supra, and concluded, "[f]rom our review of the cases, it is clear that the party need not prevail in the first suit or assert the inconsistent positions under oath ... before judicial estoppel will be applied." Hicks, 1990 WL 27335 at **3 (Tenn. App. March 16, 1990) (Emphasis added).

From our review of applicable Tennessee precedent, we are convinced that an oath is not absolutely required in order for the judicial estoppel doctrine to be applied. Although some cases note that a reason for the doctrine is "to uphold the sanctity of an oath," e.g., Sartain, 266 S.W. 313 at 318, other rationales enumerated by our courts include the maintenance of public confidence in the orderliness, purity and consistency of judicial proceedings, Hicks, supra, at **2 (citing Stearns, 208 S.W.2d at 334-5); discouraging litigants from any propensity to "play fast and loose" with the courts, Stamper v. Venable, 97 S.W. 812, 813 (Tenn.1906); and considerations of fundamental fairness in disallowing a party to gain unfair advantage by taking inconsistent positions in litigation; Shell v. Law, 935 S.W.2d 402, 408 (Tenn.App.1996). These rationales supporting the judicial

10

estoppel doctrine are equally applicable where no oath is involved.

This conclusion does not end our inquiry, however, because there is a corollary to the judicial estoppel doctrine which has been clearly and consistently applied by Tennessee courts, and which is applicable under the circumstances of this case. The Sartain court stated this Rule as follows:

> In order to avoid injustice, the severity of the [judicial estoppel] Rule has been tempered by this exception, viz.: If the party sought to be estopped can show that his previous statement under oath was made inadvertently or through mistake — "inconsiderately," as many of the cases say — he will not be precluded by his former statement.

Sartain, 266 S.W. at 317-18.

See also Stearns, 208 S.W. at 335 ("It is true that parties will be relieved of statements made by them in former proceedings, when such statements were inconsiderate, and when such other sufficient matters of excuse appear."); Helfer v. Mutual Benefit Health & Acc. Ass'n., 96 S.W.2d 1103, 1105 (Tenn.1936); Jetton, 8 Tenn.App. at 577; D.M. Rose & Co. v. Snyder, 206 S.W.2d 897, 906 (Tenn.1947) ("While judicial estoppel applies where there is no explanation of the previous contradictory sworn statement ... it does not apply where there is an explanation showing such statement was inadvertent, inconsiderate, mistaken, or anything short

11

of a 'wilfully false' statement of fact.");[3] <u>State ex rel. Ammons v. City of Knoxville</u>, 232 S.W.2d 564, 567 (Tenn.App.1950) ("it is equally conducive to the attainment of justice and hence just as important a part of the Rule that the party be allowed to explain an ostensible inconsistency, or that the statement was made inadvertently, inconsiderately or by mistake."); <u>Shores v. Heritage Fed. Sav. & Loan Ass'n.</u>, 1991 WL 3312 at *2, No. 01A01-9007-CH-00268 (Tenn. App. Jan. 18, 1991) ("The courts, however, have been slow to apply the doctrine in cases where some indication of deliberate falsehood does not appear."); <u>State ex rel. Scott v. Brown</u>, 937 S.W.2d 934, 936 (Tenn.App.1996) ("A necessary component of this Rule is that anything short of a willfully false statement of fact, in the sense of conscious and deliberate perjury, is insufficient to give rise to an estoppel and that the party is entitled to explain that the statement was inadvertent or inconsiderate or represents a mistake of law.")

As shown by the recitation of facts above, plaintiff testified to reasons as to why her guilty plea was "inadvertent" or "inconsiderate,"[4] viz.: her "excruciating" pain from her

---

[3]Subsequent cases citing the <u>D.M. Rose & Co.</u> formulation of the Rule include <u>Monroe County Motor Co. v. Tennessee Odin Ins. Co.</u>, 231 S.W.2d 386, 392–93 (Tenn.App. 1950); <u>Sturkie v. Bottoms</u>, 310 S.W.2d 451, 453 (Tenn.1958); <u>Clinton v. Gant</u>, 337 S.W.2d 761, 765 (Tenn.App.1960); <u>Terox Corp. of America</u>, 376 S.W.2d at 739; <u>Woods v. Woods</u>, 638 S.W.2d 403, 406 (Tenn.App.1982); <u>Lee v. Ellis</u>, 1992 WL 335949 at *2 (Tenn. App.); <u>Manis v. Galyon</u>, 1996 WL 155256 at *2 (Tenn. App.).

[4]We have found no decision by any of the appellate courts of this state that defines "inconsiderate" as that term is used relative to estoppel. American Heritage Dictionary of the English Language, Third Edition, Houghton-Mifflin Company, (1992), defines inconsiderate (in the context used in the cited opinions) as: 1. ... displaying a lack of (thoughtful) consideration. 2. Not well considered

12

injuries, the effects of her pain medication, and her impaired memory of the circumstances of the accident. She also testified that she spoke with her attorney, who was a friend of the defendant and had been hired by the defendant, just once, "on that very day of the court date," and that meeting was in the defendant's presence. Plaintiff testified without contradiction that her attorney was not with her in the courtroom when she pled guilty to reckless driving. At one point in her testimony she unequivocally stated, "I did not want to plead guilty."

Under all circumstances hereinbefore recited, we feel that reasonable minds could differ on the evidence presented and inferences to be drawn therefrom as to whether the plaintiff had explained the reasons for her guilty plea sufficiently to prevent the application of the doctrine of judicial estoppel. Under our standard of review, we find that the circumstances are sufficient to create a jury question as to the existence of facts which would defeat judicial estoppel.

Further, we note that this is a case in which the facts, under close scrutiny, would appear to lend themselves more to the doctrine of "collateral estoppel" rather than "judicial estoppel." Under the doctrine of collateral estoppel a party is estopped to relitigate a matter previously litigated in another action in

_____

or carefully thought out; ill-advised.

which the same issue was present and the party had a full and fair opportunity to litigate the issue in the prior action.

This court in Morris v. Esmark Apparel, Inc., 832 S.W.2d 563, 566 (Tenn.App.1991) set out the requirements for the application of collateral estoppel:

> ... in reviewing whether the application of collateral estoppel is appropriate [the court] should consider: (1) whether the issue decided in the prior adjudication was identical with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit. See Bresnahan [v. May Department Stores Co.,726 S.W.2d 327 (Mo.Banc 1987)] at 330; Salida School District R-32-J v. Morrison, 732 P.2d 1160 (Colo. 1987).

See also McDaniel v. Stambaugh, 1997 Tenn. App. LEXIS 255.

It seems quite clear that the first three requirements enumerated in Morris, supra, have been met. The fourth, however, is open to question as to whether, under the particular circumstances and facts of this case, the plaintiff had a full and fair opportunity to litigate the issue under consideration here. We are of the opinion that the evidence and the inferences that may be drawn therefrom are sufficient to create an issue for the jury.

14

Nothing in this opinion should be taken as an indication that the conviction for reckless driving is either void or voidable.[5] On that issue, we decline to express any opinion. We have recounted the facts as reflected in the record of this case only, solely for the purposes of making a determination based upon the information available to us, as to whether; (1) the plaintiff should be allowed to explain an inconsistency, or that the statement was made inadvertently, inconsiderately or by mistake, or; (2) The plaintiff had a full and fair opportunity to litigate the issue of reckless driving (and the necessary correlative issue of who was driving) in the prior litigation. Further, we do not mean to imply in any manner that the guilty plea is not competent evidence on the issue of who was driving the vehicle in question. If admitted as evidence as an admission, judicial or otherwise, pursuant to Rule 803(1.2), Tennessee Rules of Evidence, it is not conclusive unless otherwise provided by statute or another rule. See Advisory Commission Comments relating to Rule 803(1.2).

In conclusion, we hold that, as the record in this case now stands, a jury issue has been established and that a directed verdict was improvidently granted.

---

[5]We are aware of the general rule that a plea of guilty waives all non-jurisdictional defects, procedural defects, and constitutional infirmities. Ellison v. State, 549 S.W.2d 691 (Tenn.Cr.App.1976). We discuss the possible infirmities in the warrant for the sole purpose of aiding in ascertaining whether the plaintiff here had an opportunity to litigate the issue which is at the heart of this appeal.

15

The judgment of the trial court directing a verdict for the defendant is reversed.  This case is remanded to the trial court for such other and further action as may be required in conformity with this opinion.  Costs on appeal are assessed to the appellee.

_____
Don T. McMurray, Judge

CONCUR:

_____
Houston M. Goddard, Presiding Judge

_____
Charles D. Susano, Jr., Judge

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE


DELPHIA M. GREENMAN,          )     ANDERSON CIRCUIT
                              )     C.A. NO. 03A01-9709-CV-00404
                              )
          Plaintiff-Appellant )
                              )
vs.                           )
                              )
                              )     HON. JAMES B. SCOTT, JR.
                              )     JUDGE
BYRON HUTCHINS,               )
                              )
          Defendant-Appellee  )
                              )
                              )     REVERSED AND REMANDED
                              )


**JUDGMENT**


This appeal came on to be heard upon the record from the Circuit Court of Anderson County, briefs and argument of counsel. Upon consideration thereof, this Court is of the opinion that there was reversible error in the trial court.

The judgment of the trial court directing a verdict for the defendant is reversed. This case is remanded to the trial court for such other and further action as may be required in conformity with this opinion. Costs on appeal are assessed to the appellee.


PER CURIAM