IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 19, 2022

**STATE OF TENNESSEE v. HORATIO DERELLE BURFORD**

**Appeal from the Criminal Court for Bradley County**
**No. 19-CR-154      Sandra Donaghy, Judge**

_____

**No. E2021-00655-CCA-R3-CD**

_____

A Bradley County jury convicted the Defendant, Horatio Derelle Burford, of aggravated assault.  The trial court sentenced the Defendant as a Range III offender to serve twelve years in the Tennessee Department of Correction.  On appeal, the Defendant contends that the trial court failed to: (1) properly limit the State's evidence about prior injuries to the victim; and (2) preclude the State from introducing improper photographic evidence during opening argument.  After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, J., joined.  JOHN EVERETT WILLIAMS, P.J., not participating.[1]

Austin B. Hayes, Athens, Tennessee, for the appellant, Horatio Derelle Burford.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Stephen D. Crump, District Attorney General; and Paul O. Moyle, IV, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

        This case arises from a domestic assault on November 13, 2018.  For his role, in the altercation, a Bradley County grand jury indicted the Defendant for domestic aggravated assault of the victim, Heather Carver.

_____

        [1] The Honorable John Everett Williams died September 2, 2022, and did not participate in this opinion.  We acknowledge his faithful service to this Court.

Before the trial began, the State notified the trial court of "an incident involving a firearm" that occurred on Monday night, the night before the Tuesday, November 13 charged offense. The State announced that it did not intend to ask about the prior uncharged incident and advised Ms. Carver to only testify about the November 13 charged offense unless the Defendant asked, or the trial court specifically allowed her to testify about the prior uncharged incident. Defense counsel agreed, "if we open a door, I recognize that [the State] would be welcome to barge through it and focus intently on it." The State reiterated that it would not do so without first having a jury-out hearing on the testimony.

At trial, the parties presented the testimony of two witnesses, the victim and the deputy who investigated the incident, Justin Buckelew. Ms. Carver and the Defendant had been in a romantic relationship since March 2018, and in November 2018, shared a residence on Old Freewill Road, Cleveland, Tennessee. On Tuesday, November 13, 2018, Ms. Carver left work at 5:00 p.m. and picked up her child from daycare on her way home. Ms. Carver prepared dinner for her child and then fell asleep on the couch. At some point the Defendant, who was angry and hostile, arrived home and woke her up. The Defendant yelled at Ms. Carver, accusing her of infidelity, and he took her cellphone and began reviewing Ms. Carver's "messages" and "Google Maps" to determine where she recently had been.

Ms. Carver asked the Defendant to return her phone to her. He refused. After several requests, she attempted to take her cell phone from the Defendant, and the Defendant hit her multiple times. The State showed the jury photographs of Ms. Carver's face taken "[a] couple of days" after the Defendant hit her. The photographs show scratches on Ms. Carver's forehead and chin, a black eye, bruising, marks on Ms. Carver's neck, and an abrasion on her arm. Ms. Carver confirmed that the photographs accurately depicted the injuries she sustained during the altercation with the Defendant.

Upon the Defendant's first blow to Ms. Carver's face, Ms. Carver experienced significant pain and was terrified. She was concerned for her daughter who was asleep in the next room. After the Defendant struck Ms. Carver on the face, Ms. Carver again reached for her phone. This time the Defendant picked up a stool and struck Ms. Carver on her face and head with the stool.

The Defendant hit Ms. Carver multiple times as she crouched on the ground by his feet trying to block the blows with her arm. The Defendant also placed his hands around Ms. Carver's neck and "slammed [her] on the bed and . . . squeezed until [she] couldn't breathe." Due to the pressure on her throat, Ms. Carver was unable to scream. As the Defendant placed pressure on her throat, Ms. Carver hit the Defendant in an attempt to get him to release her.

2

The Defendant did not return Ms. Carver's phone to her. Ms. Carver possessed another phone for work purposes, but she did not use the work phone to call the police at the time because she feared another attack from the Defendant. She reiterated that she was terrified of the Defendant and concerned for her child in the next room. The next morning, Wednesday, Ms. Carver attempted to cover the injuries with make-up and went to work where her employer photographed the injuries.

Ms. Carver finished her day at work on Wednesday, November 14, picked up her child from daycare, and then drove to her mother's home. Once at her mother's home, she called the police. She explained that she did not call the police at work because she was afraid of losing her job due to the disruption of a police investigation during the workday. Officer Buckelew met with Ms. Carver at her mother's home and observed her injuries.

On cross-examination, defense counsel inquired about Ms. Carver's "morning routine" and whether there had been anything "different" with her morning routine on Tuesday, November 13, 2018. The following exchange followed:

| | |
|---|---|
| Ms. Carver: | I caked on a lot more makeup that morning. Usually, I don't wear that much. |
| Defense: | On Tuesday morning? |
| Ms. Carver: | Uh-huh. |
| Defense: | Okay. Why were you caking on so much on Tuesday morning if he didn't hit you till Tuesday night? |
| Ms. Carver: | Because I had previous injuries Tuesday. |

At the conclusion of cross-examination, the State requested a jury-out hearing. The State identified defense counsel's question about why Ms. Carver applied more makeup on Tuesday morning and Ms. Carver's response about previous injuries as evidence that "opened the door" to introduction of the prior uncharged incident. The State argued, "I don't know why defense counsel would ask that question. But the question was asked. The response was given and now the State has to be able to explain that to the jury." The State argued that the defense had lodged a line of questioning suggesting that the photographs of the injuries were not taken at the time testified to by Ms. Carver. The State sought to "explain" and distinguish the prior injuries from those for which the Defendant was on trial.

3

The trial court agreed that "to the extent that injuries existed on the alleged victim [before the charged incident], there need[s] to be an explanation for the jury." The trial court then allowed the State to question Ms. Carver, outside the presence of the jury, about the injuries she had at the time of the November 13 charged assault. After the questioning, Defense Counsel disagreed that the "door [was] opened" but "defer[red] to the good judgment of this Court as to the 404B issue." The trial court then ruled that the State could question Ms. Carver about the injuries she covered with makeup on Tuesday morning before the charged incident. The trial court stated:

> Generally conduct that is uncharged misconduct should be excluded by the Court, but in this case, I was, frankly, surprised when the question was asked why did she have to cake on makeup Tuesday morning and her -- her response. [T]hat question should not have been asked. To the extent that her response was previous injuries, I think the jury has got to ferret out what injuries that have been proved in this case relate to this case. And so I think that has got to be cleared up for the jury. The problem that we find ourselves faced squarely with is that evidence of other crimes of other acts cannot be offered to show propensity, but to go to some other issue. And quite frankly where we are it is to explain the circumstances of the crime. . . .

> I read [Ms. Carver]'s statement and her penmanship was difficult for me to read, but I remember reading about a gun and fighting off and on. There's also been evidence introduced to this jury now that this -- this victim did not sleep most of the night. So the inference is she didn't sleep because she was being injured by some - - some act.

> So I think the only fair way to handle it is to allow the State to inquire about what injuries she had that she was covering up with makeup and -- and then I will do a 404B instruction to the jury. It comes out of 412 in our pattern jury instructions I think or maybe 42-12. Let me take a look. 4210. Evidence of other crimes. I will explain to the jury that they may not consider evidence of other crimes to prove [the Defendant]'s disposition to commit a crime as that on trial. But it may only be considered for the limit[ed] purpose of completing the story of the crime.

> And -- and I'll end it with such evidence of other crime or crimes if considered for any purpose must not be considered for any purpose other than that specifically stated. It doesn't go to identity. It doesn't go to scheme or plan. It doesn't go to motive. It doesn't go to the [D]efendant's intent.

4

I'm sure the State would like [it] to be considered to show a propensity for violence, but I'm – I'm not going to permit that under 404B. So I'm going to allow the State to inquire into the preexisting injuries because the jury needs to know that to determine the extent of the injuries that were caused by the charged conduct. And then once we have heard that, I'll give them the 42-10 curative instruction.

The trial resumed and on redirect examination, the State inquired about Ms. Carver's prior injuries. Ms. Carver testified that the Defendant inflicted the injuries "[w]ith his hands" while they were fighting. The State then had Ms. Carver, with the use of the previously introduced photographs of her injuries, distinguish between the prior injuries and the ones sustained during the charged incident. The trial court instructed the jury that it could "not consider such evidence to prove [the Defendant's] disposition to commit a crime like that that is on trial." The trial court explained that the jury was to consider this evidence only "for the limited purpose of determining the context of the crime." On recross examination, the Defendant inquired about the prior injuries and why Ms. Carver felt she needed to use make up to cover the injuries.

Bradley county Sheriff's Deputy Justin Buckelew confirmed that he responded to this call on Wednesday evening, November 14, 2018, at Ms. Carver's parents' residence. Deputy Buckelew described Ms. Carver's injuries as follows:

Her right eye was swollen shut, pretty much. Bruising to - - I saw slight bruising on her neck and markings on her neck. Scratches on her - - right side of her face. I saw bruising on her left eye. And then slight bruising on top of her left forearm and an abrasion.

After reviewing the photographs of Ms. Carver's injuries, Deputy Buckelew stated that he observed more swelling and redness around Ms. Carver's throat than he saw in the photographs. He also noted that Ms. Carver's voice was "very hoarse" and "raspy" when she spoke. Based upon Ms. Carver's statements and the injuries he observed, Deputy Buckelew obtained a warrant for the Defendant's arrest.

After all the proof and before jury deliberation, the trial court charged the jury with the Tennessee Pattern Jury Instruction regarding evidence of other crimes or bad acts in light of the testimony about the Monday night uncharged incident.

After hearing this evidence, the jury convicted the Defendant of aggravated assault, and the trial court sentenced the Defendant to serve twelve years in the Department Correction. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that the trial court improperly: (1) admitted evidence regarding a previous altercation between the Defendant and Ms. Carver; and (2) allowed photographic evidence of Ms. Carver's injuries during opening argument. The State responds that the trial court properly admitted limited testimony about Ms. Carver's prior injuries after the Defendant put those injuries at issue during cross-examination. As to the photographs used during opening argument, the State responds that the trial court acted within its discretion in allowing use of the photographs. We agree with the State.

### A. 404(b) Evidence

The admission of evidence is left to "the sound discretion of the trial judge," *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992), and "[r]elevancy is always a judicial question to be determined according to the issue which is to be tried." *Randolph v. State*, 570 S.W.2d 869, 872 (Tenn. Crim. App. 1978) (quoting *Ellison v. State*, 549 S.W.2d 691, 696 (Tenn. Crim. App. 1976)). We review a trial court's admission of evidence under an abuse of discretion standard and will reverse the decision to admit evidence only if "the court applied an incorrect legal standard, or reached a decision which is against logic or reasoning" and admission of the evidence "caused an injustice to the party complaining." *State v. Gilliland*, 22 S.W.3d 266, 270 (Tenn. 2000) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)) (internal quotation marks omitted).

"Evidence of other crimes, wrongs, or bad acts is not admissible to prove the character of a person in order to show action in conformity with that character trait. T.R.E. 404(b). Such evidence may be admissible, however, for "other purposes." *Id*. If the evidence sought to be admitted is relevant to an issue other than the accused's character, such as identity, motive, common scheme, intent, or rebuttal of accident or mistake, it may be admitted for that purpose so long as the danger of unfair prejudice does not outweigh the probative value. T.R.E. 404(b), *Advisory Comm'n Cmts*. When a party seeks to introduce evidence of other crimes, wrongs, or acts, the trial court must: (1) hold a hearing outside the jury's presence; (2) determine whether a material issue exists other than conduct conforming with a character trait and, upon request, state the basis for its determination; (3) find proof of the other crime, wrong, or act to be clear and convincing; and (4) determine that the probative value of the evidence is not outweighed by the danger of unfair prejudice. T.R.E. 404(b). The safeguards in Rule 404(b) ensure that defendants are not convicted for charged offenses based on evidence of prior crimes, wrongs, or acts. *State v. James*, 81 S.W.3d 751, 758 (Tenn. 2002). When a trial court substantially complies with the procedural requirements of Rule 404(b), the standard of appellate review of the trial court's decision is abuse of discretion. *See State v. Powers*, 101 S.W.3d 383, 395 (Tenn. 2003); *James*, 81 S.W.3d at 759. Any error in the admission of the evidence does not

require reversal unless it "more probably than not affected the judgment or would result in prejudice to the judicial process." *State v. Jones*, 450 S.W.3d 866, 900 (Tenn. 2014).

In the Defendant's motion for new trial, he argued that the trial court failed to expressly find that evidence of the prior assault was clear and convincing, and that the trial court did not expressly balance the probative value of the evidence against the danger of unfair prejudice. At the motion for new trial, the trial court made the following findings as to this issue:

> It is clear from the portion of the transcript quoted by the State that I did a balancing test. I tried to figure out how best when the jury had heard the evidence of the caked on makeup to cover up old injuries how best to guard the [D]efendant's rights to a fair trial and to assure that the Rules of Evidence were followed. And so I considered what was fair and what was not. I made the decision after a jury-out hearing. Although I may not have stated that the evidence was to a clear and convincing state, looking back and hearing now I feel that it was and I would not have permitted the State to go into that evidence if I did not feel that it met all of the requirements of 404B. When people are in the heat of battle, so to speak, of trial, sometimes exact words are left off. But when the substance of the law is followed -- and I feel that I did. I balanced it. I made a determination. I ruled by giving the 42.10 jury instruction. All of those things are to tell the jury that if they consider it for any purpose, it's not to be propensity evidence. So the evidence was prejudicial, but it was not unfairly prejudicial given the inquiry of the defense that put that squarely before the jury to begin with.
>
> So I'm looking at 404B and I'm familiar with the provisions that defense counsel have cited. And I find that the jury-out hearing that I held was outside of the jury present. It was concerning a very material issue which is the complete story of the case. It was something that was open – the door was opened by defense counsel. It was other wrong, so I gave the 42.10 instruction and I weighed the fairness. So although it perhaps was less articulate than it should have been, I followed the law as it relates to admissibility of that very difficult evidence.
>
> So I deny the request for a new trial based upon that particular ground.

We conclude that the trial court did not err by admitting the evidence at issue. Defense counsel elicited the testimony creating a "gap" in the proof. The trial court held a hearing outside the presence of the jury to hear the arguments and potential testimony. *See* T.R.E. 404(b)(1). The trial court, when deciding to admit the evidence, stated on the record

7

that it was admitting the evidence because it explained the circumstances of the crime. *See* T.R.E. 404(b)(2). The trial court conducted a balancing test before permitting the questioning by considering the State's need to explain the circumstances of a prior incident elicited by the defense and the prejudicial effect requiring a jury instruction on the issue. Although, the trial court did not explicitly state that it found the proof of the Defendant's prior bad acts was "clear and convincing," the record reflects that the trial court was quite familiar with Rule 404 and its requirements. In our view, the trial court substantially complied with Rule 404 and properly admitted evidence of the prior injuries. The Defendant is not entitled to relief on this issue.

## B. Photographs of Injuries

The Defendant asserts that the trial court abused its discretion when it allowed the State to show the jury photographs of Ms. Carver's injuries during opening statements. The State responds that the trial court properly exercised its discretion by allowing the photographs.

The right to make an opening statement is protected by statute, which states that "all parties to the action shall have the right prior to the presentation of any evidence in the case to make an opening statement to the court and jury setting forth their respective contentions, views of the facts and theories of the lawsuit." T.C.A. § 20-9-301 (2021). Opening statements are not evidence but simply set forth the arguments and theories which will be relied on by the parties at trial. *State v. Van Tran*, 864 S.W.2d 465, 475 (Tenn. 1993). They are "'are intended merely to inform the trial judge and jury, in a general way, of the nature of the case and to outline, generally, the facts each party intends to prove.'" *State v. Sexton*, 368 S.W.3d 371, 415 (Tenn. 2012) (quoting *State v. Stout*, 46 S.W.3d 689, 713 (Tenn. 2001)). Opening argument, like closing argument, must be predicated on evidence introduced at trial and should only refer to admissible evidence. *Sexton*, 368 S.W.3d at 415. Opening statements may not be used "to present speculation and conjecture which is unsupported by admissible proof." *Stout*, 46 S.W.3d at 713. A trial court should not make evidentiary rulings during opening statement; however, it may use its discretion to exclude from opening statements assertions which it deems unlikely to be supported by admissible evidence. Absent an abuse of that discretion, this Court will not overturn a trial court's ruling in that regard. *Id.*

Before trial, the State requested the trial court's permission to show photographs of Ms. Carver's injuries as part of its opening argument. Both parties made argument to the trial court, and then Ms. Carver testified about the photographs to aid the trial court in determining the admissibility of the photographs. Relying on *Stanfield v. Neblett*, 339 S.W.3d 22 (Tenn. Ct. App. 2010), and *State v. Sexton*, the trial court considered whether

the photographs were likely to be admitted and found that, with the proper foundation, the photographs of Ms. Carver's injuries were admissible through Ms. Carver's testimony.

While the introduction of photographic evidence during opening argument is unusual, the trial court did not abuse its discretion in allowing the use of the photographs in the State's argument. The Defendant received the photographs in discovery and thus knew or should have known that the photographs would be introduced at trial. The trial court held a hearing before trial and determined that the photographs were admissible through Ms. Carver, who would be testifying at trial. The photographs were introduced at trial through Ms. Carver with no objection from the Defendant. The Defendant was provided the opportunity to and did, in fact, cross-examine Ms. Carver about the photographs. We cannot conclude that the trial court abused its discretion in these particular circumstances.

To the extent, the Defendant takes issue with the trial court's reliance on *Stanfield v. Neblett*, because it is a civil case rather than a criminal case, we would point out that the trial court relied on both *Stanfield* and *State v. Sexton*. The latter being a case decided by the Court of Criminal Appeals.

Accordingly, we conclude that the trial court did not abuse its discretion in determining that the photographs were admissible and allowing the State to use those photographs in opening argument. The Defendant is not entitled to relief as to this issue.

### III. Conclusion

For the foregoing reasons, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

9