IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 17, 2019 Session

## ROMGLOBAL, INC., ET AL. v. STEVE MILLER ET AL.

**Appeal from the Chancery Court for Sevier County**
**No. 16-9-284          Telford E. Forgety, Jr., Chancellor**

_____

### No. E2019-00058-COA-R3-CV

_____

The plaintiff corporation filed an action for breach of contract, claiming that the defendants had failed to recognize the plaintiff's ownership in a limited liability company that was allegedly based on an oral agreement between the plaintiff and defendants. The trial court dismissed the plaintiff's claims, determining that the plaintiff had failed to present clear and convincing evidence establishing the parties' agreement that the plaintiff would have an ownership interest in the company. The plaintiff has appealed. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

James N.L. Humphreys and Matthew F. Bettis, Kingsport, Tennessee, for the appellant, Romglobal, Inc.[1]

Edward H. Hamilton, Sevierville, Tennessee, for the appellees, Steve Miller; Smoky Mountain Ridge on Cove Creek, LLC; and Steve Miller & Associates, Inc.

---

[1] We note that the appellate brief filed by Romglobal, Inc., indicates that its attorneys also represent RomCraft Construction Co., LLC, which joined in the filing of the notice of appeal in this action. However, RomCraft Construction Co., LLC, has raised no issues on appeal.

## OPINION

### I. Factual and Procedural Background

The plaintiff, Romglobal, Inc. ("Romglobal"), filed a complaint on September 12, 2016, in the Sevier County Chancery Court ("trial court"), naming as defendants Steve Miller, individually; Steve Miller & Associates, Inc.; and Smoky Mountain Ridge on Cove Creek, LLC ("the LLC") (collectively, "Defendants"). In the complaint, Romglobal alleged that Defendants had entered into a contract to purchase a parcel of real property in Sevier County ("the Property") that had already been subdivided and partially developed, and which was known as Smoky Mountain Ridge. According to Romglobal's complaint, Defendants had asked Romglobal to provide funds toward such purchase in exchange for a minority ownership interest in the LLC, which would ultimately come to hold the title to the Property. Defendants had allegedly represented that Romglobal would receive "an equity membership/ownership voting interest in the Company of 24.5000% and an economic membership/ownership interest in the Company of 33.3333%." According to Romglobal, although it advanced funds totaling $40,000.00 to Defendants based on said promise of an ownership interest in the LLC, Defendants subsequently refused to acknowledge Romglobal's ownership interest.

Romglobal asserted claims of breach of contract, conversion, and unjust enrichment, seeking damages of $4,086,662.58, which amount allegedly represented 33.3333% of the net value of the Property owned by the LLC. Romglobal also sought specific performance of its contract with Defendants, ownership rights in the LLC, attorney's fees, and court costs.

Defendants filed an answer on November 4, 2016, denying that Romglobal was entitled to an ownership interest in the LLC. Defendants averred that Gabriel Vasile of Romglobal was approached by a previous potential buyer of the Property, Galler Lehman Law, P.A. ("Galler Lehman"), and asked to provide a $25,000.00 non-refundable earnest money deposit for Galler Lehman's purchase of the Property. Defendants alleged that a subsequent check for $15,000.00 was provided by Romglobal, on behalf of Galler Lehman, in order to obtain an oral extension of time on the purchase. Defendants averred that the extension expired on September 5, 2014, and that Galler Lehman failed to obtain the funding needed to close the sale. Therefore, according to Defendants, the $40,000.00 paid by Romglobal on behalf of Galler Lehman was forfeited to the seller, Steve Miller and Associates, Inc., as had purportedly been established in a separate lawsuit.

Defendants averred that Mr. Vasile had represented that he could obtain substantial funds for construction but had failed to do so. They further averred that this was a condition precedent to Mr. Vasile or Romglobal obtaining any interest in the LLC.

- 2 -

Defendants asserted that no contract had been formed because there was no meeting of the minds and because of the failure of a condition precedent. Defendants further stated that in the alternative, if an agreement was formed between the parties, Romglobal had materially breached the agreement.

Defendants concomitantly filed a counter-complaint against Romglobal as well as a third-party complaint against Mr. Vasile and RomCraft Construction Co., LLC ("RomCraft"). Defendants alleged that Mr. Vasile had interfered with the Defendants' sale of various lots by informing the title company that the lots could not be conveyed due to this lawsuit and the filing of a lien by RomCraft. Defendants further alleged that Mr. Vasile had slandered the title to certain lots and interfered with Defendants' contracts. Defendants thus sought damages for slander of title, interference with contracts, and loss of real estate commissions, as well as payment of attorney's fees and treble damages.

RomCraft subsequently filed a counterclaim against Defendants, alleging that RomCraft had performed maintenance work on the Property at the behest of Mr. Miller but that RomCraft had not been paid for its work. RomCraft valued the work performed at $15,000.00. Meanwhile, Romglobal filed a motion seeking to have Defendants' counter-complaint and third-party complaint dismissed.

Defendants filed a motion for partial judgment on the pleadings on June 29, 2017, asserting that because Romglobal had claimed to have no more than a 33.3333% interest in the LLC, Romglobal's potential ownership interest in the LLC should be limited to this percentage. Defendants subsequently filed a motion to amend their counterclaim and third-party claim to add Mr. Vasile and RomCraft as additional defendants. The trial court conducted a hearing concerning the pending motions on February 3, 2017, and April 7, 2017, and subsequently entered an order denying the motion to dismiss the counter-complaint, granting the motion to amend the counter-complaint, and reserving the remaining motions to dismiss for further hearing.

The trial court entered a subsequent order on July 18, 2017, granting the motion to dismiss the third-party complaint against Mr. Vasile and RomCraft. The court also denied Defendants' motion to amend their counterclaim and third-party claims to add Mr. Vasile and RomCraft as additional defendants. The court further granted Defendants' motion for partial judgment on the pleadings, limiting Romglobal's claim to 24.5000% of the voting interest and 33.3333% of the economic/ownership interest in the LLC.

On January 22, 2018, the trial court entered an "Order to Add Proper Parties," stating that the court had determined from the pleadings and statements of counsel that Xavier Amberge and the personal representative and heirs of Michael Murray, deceased, should be added as parties due to their potential interest in the LLC. The court therefore

ordered Romglobal to file an amended complaint adding these parties as defendants and to serve proper process upon them. Romglobal filed the respective amended complaint on January 31, 2018.

Mr. Amberge subsequently filed an answer, stating that he held a 24.5% ownership interest in the LLC pursuant to a written agreement with Mr. Miller. Four of Mr. Murray's children—Shane Murray, Michael Murray, Tracy Mallory, and Ryan Murray—filed *pro se* answers asserting ownership claims in the LLC by virtue of their kinship to Mr. Murray. Linda Murray, Mr. Murray's widow, subsequently filed a *pro se* answer, likewise asserting a claim of ownership in the LLC.

The trial court conducted a hearing on August 29 and 30, 2018. The court subsequently entered a final order on October 3, 2018, finding as follows:

1. The verbal Motion of the original Defendants to Amend their Answer to remove any and all allegations and affirmative defenses requesting offsets, adjustments or credits for expenses incurred by Steve Miller and/or Steve Miller & Associates, Inc., is granted. Therefore all such pleadings are removed and not adjudicated in this cause.

2. All claims of the Plaintiff, Romglobal, Inc., for an ownership interest and voting rights in SMRCC, LLC, and all claims for monetary damages against the original Defendants are dismissed with prejudice.

3. All claims of the Murray Parties for an ownership interest and voting rights in SMRCC, LLC, and all claims for monetary damages against the original Defendants are dismissed with prejudice.

4. The monetary claim of RomCraft Construction Co., LLC, for work performed at SMRCC, LLC, is dismissed with prejudice.

5. This Final Order may be recorded in the Register of Deeds for Sevier County Tennessee as a full and final Release of the Notice of Lien of RomCraft Construction Co., LLC, recorded at Book 4441, page 806.

6. The Counter Complaint against Romglobal, Inc., for slander of title and interference with contract is dismissed with prejudice.

7.     The claim of Brandonn Xavier Amberge for an ownership interest in SMRCC, LLC, was not opposed and the Court finds that Brandonn Xavier Amberge is a Member with a 24.5% ownership interest in SMRCC, LLC, subject to the terms and conditions of that Operating Agreement of Smoky Mountain Ridge on Cove Creek, LLC, between Steve Miller and Brandonn Xavier Amberge dated September 21, 2015, and filed as Exhibit 19 in the Trial of this cause.

8.     The Clerk & Master is hereby ordered to hold the sum of Forty Thousand ($40,000.00) Dollars paid into the Chancery Court until the Final Order either becomes non-appealable or is affirmed on appeal.

9.     Court costs are assessed against Romglobal, Inc., for which execution may issue if necessary.

The trial court's memorandum opinion was attached and incorporated into this order.

Romglobal and RomCraft filed a post-trial motion on October 4, 2018, which the trial court denied by order dated December 11, 2018. Romglobal and RomCraft timely appealed.

## II. Issues Presented

Romglobal has presented the following issues for our review, which we have restated slightly:

1.     Whether the trial court erred by requiring Romglobal to prove its claim of breach of contract by clear and convincing evidence.

2.     Whether the trial court erred by failing to determine that the evidence preponderated in favor of Romglobal on its breach of contract claim.

3.     Whether the trial court erred by failing to determine that Romglobal had proven that an agreement existed between the parties requiring Defendants to convey an interest in the LLC to Romglobal.

4.     Whether the trial court erred by requiring Romglobal to join the Murray heirs and Mr. Amberge as additional parties.

5.      Whether the trial court erred by prohibiting the cross-examination of Mr. Miller concerning the code of ethics applicable to realtors.

## III. Standard of Review

Our review of the trial court's judgment following a non-jury trial is *de novo* upon the record, with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett,* 92 S.W.3d 835, 838 (Tenn. 2002). We review the trial court's conclusions of law *de novo* with no presumption of correctness. *Hughes v. Metro. Gov't of Nashville & Davidson County*, 340 S.W.3d 352, 360 (Tenn. 2011).

## IV. Applicable Standard of Proof

Romglobal asserts that the trial court erred by misclassifying Romglobal's breach of contract claim as an implied partnership claim and thereby determining that the burden of proof applicable to Romglobal's claim would be by a standard of clear and convincing evidence. The distinction between these types of claims is significant because the classification of the claim determines the standard of proof required to substantiate that claim. On the one hand, if the claim was simply for breach of contract, Romglobal would have to prove the elements of the claim by a preponderance of the evidence. *See Next Generation, Inc. v. Wal-Mart, Inc.*, 49 S.W.3d 860, 864 (Tenn. Ct. App. 2000) ("[A] contract can be oral or written or both, and . . . the existence of a contract must be proven by preponderance of the evidence."). On the other hand, when a party claims an ownership interest in a partnership and there is no written partnership agreement, the party alleging the existence of an implied partnership bears the burden of proving that fact by clear and convincing evidence. *See In re Estate of Threefoot*, No. W2005-02942-COA-R3-CV, 2006 WL 3114147, at *5 (Tenn. Ct. App. Nov. 3, 2006).

In this matter, Romglobal's complaint alleged that Romglobal and Defendants had "entered into a verbal contract under which, in exchange for [Romglobal's] payment of $40,000, [Romglobal] would become a 24.5000% voting member and 33.3333% equity member in the Company that was acquiring the Property." Romglobal further asserted that Defendants had breached that contract by subsequently failing to acknowledge

Romglobal's membership interest after Romglobal paid in the $40,000.00 payment. Romglobal thus sought to be awarded, *inter alia*, voting and equity rights in the LLC. Accordingly, the gravamen of Romglobal's complaint is an action for enforcement of its alleged ownership interest in the LLC when the parties have no written agreement.

A similar claim was made in *Estate of Threefoot*, wherein the plaintiff sought to enforce an oral agreement to establish a partnership. *See* 2006 WL 3114147, at *1. The trial court analyzed the plaintiff's claim as one for establishment of an implied partnership and applied the clear and convincing standard as the plaintiff's burden of proof. *Id*. at *3. On appeal, the plaintiff argued that the trial court erred by "requiring the Estate to prove the existence of an enforceable partnership contract by clear and convincing evidence, and assert[ed] that the less stringent preponderance of the evidence standard is applicable to the question of whether an oral contract to fund the Partnership exists." *Id*.

The *Threefoot* Court determined that the clear and convincing evidence standard was the appropriate level of proof to be applied to the plaintiff's claim that there existed an oral contract to establish a partnership. *Id*. at *6. As this Court specifically stated, "the record here must establish, 'by clear and convincing proof, the existence of an oral contract of partnership evidenced by mutual assent to sufficiently definite terms that is supported by valid consideration.'" *Id*. (quoting *In re Taylor & Assoc., L.P.*, 249 B.R. 448, 469, 1998 WL 1572942 (Bankr. E.D. Tenn. 1998)). The *Threefoot* Court further explained that although a contract to form a partnership may be "express or implied, written or oral," in order to be enforceable, it must "result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, and must be sufficiently definite.'" *Id*. at *5 (quoting *Wheeler v. Haley*, No. 91-267-1, 1993 WL 398489, at *5 (Tenn. Ct. App. Oct. 1, 1993)).

Similarly, here, Romglobal seeks to enforce its alleged oral contract with Defendants to establish Romglobal as an owner and member of the LLC. Although we recognize that under Tennessee law, an LLC is a business entity that is legally distinct from a partnership, *see, e.g., ARC LifeMed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 27 (Tenn. Ct. App. 2005), we discern no reason that a claim based on an oral contract to establish an interest in an LLC should be subject to less scrutiny than a claim based on an oral contract to establish an interest in a partnership. We further note that although the Tennessee Limited Liability Company Act, codified at Tennessee Code Annotated § 48-201-101, *et seq*. (2019), contains stringent requirements concerning the necessary documentation for establishment and operation of a limited liability company in Tennessee, this Court has previously recognized that a claim of ownership in a limited liability company could potentially be based on an oral agreement if the proper proof of such an agreement were presented. *See, e.g., Bridgeforth v. Jones*, No. M2013-01500-COA-R3CV, 2015 WL 336376, at *19 (Tenn. Ct. App. Jan. 26, 2015) (reversing the trial

- 7 -

court's grant of summary judgment because there were disputes of material fact regarding the plaintiff's claim that an oral contract existed concerning her ownership in a limited liability company); *Schott v. Animagic Studios, LLC*, No. E2003-02287-COA-R3CV, 2004 WL 1813280, at *5 (Tenn. Ct. App. Aug. 16, 2004) (determining that no agreement had been reached concerning the plaintiff's alleged ownership interest in the subject limited liability company without specifically addressing the appropriate standard of proof to be applied).

Having determined that the trial court applied the appropriate standard of proof in this matter, we will proceed in the following section to analyze the evidence to determine whether Romglobal proved its claim that it acquired an interest in the LLC via an oral agreement by clear and convincing evidence.

## V. Evidence of Oral Agreement

We again note that although a contract to form a business entity may be "express or implied, written or oral," in order to be enforceable, it must "'result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, and must be sufficiently definite.'" *In re Estate of Threefoot*, 2006 WL 3114147, at *5 (quoting *Wheeler v. Haley*, No. 91-267-1, 1993 WL 398489, at *5 (Tenn. Ct. App. Oct. 1, 1993)). In the case at bar, we agree with the trial court's conclusion that the evidence was simply insufficient to establish that Mr. Vasile, on behalf of Romglobal, and Mr. Miller, on behalf of the LLC, reached a "meeting of the minds in mutual assent to terms" that were "sufficiently definite." *See id.*

During trial, Mr. Vasile testified that he became involved with the purchase of the Property after he was asked by a representative of Galler Lehman to travel to Tennessee and look at the Property. Mr. Vasile explained that after viewing the Property, he was asked to provide the earnest money for its purchase by Galler Lehman. Accordingly, Mr. Vasile initially provided the $25,000.00 down payment on the Property on behalf of Galler Lehman, and in return Mr. Vasile was supposed to receive repayment of the $25,000.00, five lots within the subdivision, and a $50,000.00 fee.

Mr. Vasile further testified that after the Galler Lehman purchase failed to close on August 25, 2014, he and Mr. Miller began discussing a new transaction the following day. Mr. Vasile stated that Mr. Miller told him they could be partners in the purchase of the Property if Mr. Vasile could provide another $15,000.00 toward the down payment. Mr. Vasile tendered another $15,000.00 to the title company on September 3, 2014, which was the same day that Mr. Miller filed the necessary documents to establish the LLC as a single-member entity. The Property was ultimately purchased by the LLC on September 30, 2014, with a down payment of $110,000 and the remaining balance financed by the seller. Mr. Vasile stated that he provided $40,000.00 of the down

payment from the payments he had already made to the title company, and Mr. Miller's wife paid the remaining $70,000.00 of the down payment.

Mr. Vasile related that he then began to search for investors to provide funds for the development of the Property and construction of cabins. Mr. Vasile testified that although he brought several investors forward, Mr. Miller did not want to work with any of them. Mr. Vasile explained that he also brought in four men from his construction company in Atlanta to clean up the Property. In addition, Mr. Vasile stated that his attorney in Atlanta, Louis Bridges, was working on an operating agreement for the LLC.

According to Mr. Vasile, during the time period while he was looking for investors, he worked from Mr. Miller's office when he was in Tennessee. Mr. Vasile related that Mr. Miller told others that Mr. Vasile was his partner, including the Smoky Mountain Ridge homeowners during an October 2014 homeowners meeting. Mr. Vasile further stated that Mike Murray was also working from Mr. Miller's office for a short period of time prior to Mr. Murray's unexpected death. Mr. Vasile related that on one occasion, Mr. Miller shook hands with Mr. Vasile and Mr. Murray and said that they were all "partners," with each having a one-third interest. Mr. Vasile further stated that Mr. Murray was also working on an operating agreement for the LLC.

Mr. Murray became ill and passed away suddenly in mid-October of 2014. According to Mr. Vasile, Mr. Miller told Mr. Murray's wife and sons that Mr. Murray was a "good partner" and that he would see to it that Mr. Murray's heirs received his fair share of the company. Mr. Vasile stated that he then traveled to Europe for ten days to meet with potential investors. When he returned, Mr. Miller told him that "this is not going to work out" and offered to credit his $40,000.00 investment toward another property that Mr. Miller was brokering, which contained an apartment complex. Mr. Vasile refused Mr. Miller's offer and left.

In December 2014, Mr. Vasile and his attorney, Mr. Bridges, sent demand letters to Mr. Miller seeking recognition of Mr. Vasile's ownership interest in the LLC. Mr. Vasile additionally invoiced Mr. Miller for the work performed on the Property by RomCraft's construction crew in the amount of $14,354.95. Mr. Vasile stated that because Mr. Miller had refused to pay RomCraft for the work done on the Property, Mr. Vasile filed a mechanic's lien thereon. Mr. Vasile testified that he was ultimately seeking a one-third interest in the LLC based on an oral partnership agreement. When questioned about the specifics of their oral agreement, Mr. Vasile explained that Mr. Murray, Mr. Miller, and he were each to have a one-third interest in the LLC. He further explained that Mr. Murray would manage operations and handle finances, Mr. Miller would be director of marketing and sales, and Mr. Vasile was to select builders and suppliers and perform maintenance.

Mr. Bridges, Mr. Vasile's Atlanta attorney, testified that he and Mr. Vasile participated in a conference call in the summer of 2014 with Mr. Miller. Mr. Bridges noted that Mr. Miller and Mr. Vasile discussed being partners in the development of Smoky Mountain Ridge, and Mr. Bridges reportedly told them they should establish a limited liability company for such purpose. Mr. Bridges related that Mr. Miller was to own two-thirds of the company and Mr. Vasile was to own the remaining one-third. According to Mr. Bridges, Mr. Miller was to manage the LLC, but no details were worked out otherwise. He explained that he had not heard of Mr. Murray, although he did relate that they discussed another gentleman who was helping and had died. Mr. Bridges further stated that he was never asked to draft an operating agreement.

Mr. Miller testified that he was a realtor and had originally arranged to purchase the Property for $500,000.00 and immediately "flip it" by selling it to Galler Lehman for $650,000.00. Mr. Miller explained that if this transaction had closed, he would have had no involvement with the Property after closing. Mr. Miller stated that Galler Lehman paid $25,000.00 in earnest money, which he later learned was paid by Romglobal, and the transaction was originally set to close on August 8, 2014. According to Mr. Miller, the closing date was extended initially to August 25, 2014, and was extended further to September 5, 2014, upon an additional payment of $15,000.00 by Galler Lehman, which payment was actually made by Romglobal.

Mr. Miller testified that when Galler Lehman failed to close by the August 25 date, he began negotiating with the seller in the event he had to complete the purchase of the Property without a subsequent buyer in place. He related that he formed a single-member LLC in early September in order to be able to purchase the Property and have title held by the LLC in case Galler Lehman again failed to close the deal. Mr. Miller ultimately purchased the Property in the name of the LLC and paid $110,000.00 down, with $70,000.00 supplied by his wife and the remaining $40,000.00 coming from the nonrefundable funds held in escrow by the title company from the defunct Galler Lehman deal.

Mr. Miller also testified that he never had an agreement with Mr. Vasile to convey Mr. Vasile an ownership interest in the LLC unless Mr. Vasile was able to raise additional money for development of the Property. According to Mr. Miller, the monies paid by Romglobal on behalf of Galler Lehman constituted nonrefundable earnest money that was forfeited when the transaction failed to close. Mr. Miller denied telling Mr. Bridges that he and Mr. Vasile were partners. Mr. Miller explained that Mr. Vasile brought workers up from Atlanta to clean the Property without asking Mr. Miller. Mr. Miller further explained that any other work performed by Mr. Vasile was to raise money for development because that was how Mr. Vasile would obtain an interest. Mr. Miller stated that he told Mr. Vasile, "you bring the money and we will sit down and talk."

Mr. Miller described the investors that Mr. Vasile sought to bring in as "crooks," stating that the sole potential investor who actually offered money would only provide a $5,000,000.00 loan. Mr. Miller stated that he was always skeptical of Mr. Vasile's ability to provide capital because Mr. Vasile had failed to do so for Galler Lehman. Mr. Miller admitted that he wanted Mr. Murray's help because Mr. Murray was the original developer of the subdivision and had a wealth of knowledge concerning it. Mr. Miller stated that he told Mr. Murray he would bring him into the company after he "got the money to flowing." Mr. Murray, unfortunately, passed away after being in Tennessee for approximately one week. Mr. Miller also utilized assistance from Mr. Amberge, to whom he later conveyed a 24.5% ownership interest in the LLC.

The remaining witnesses at trial were Ryan Murray, one of Mr. Murray's sons, and Linda Murray, Mr. Murray's widow. They both testified that Mr. Miller assured them in the days following Mr. Murray's death that he would make sure Mr. Murray's family received his share of the company or what they were "due." Deposition testimony from additional witnesses demonstrated that Mr. Miller had referred to Mr. Vasile as his "partner" in front of others.

In its findings and conclusions rendered from the bench and transcribed in its memorandum opinion, the trial court found that Mr. Vasile tendered $25,000.00 in nonrefundable earnest money on behalf of Galler Lehman toward Galler Lehman's purchase of the Property. The court also found that Mr. Vasile subsequently paid an additional $15,000.00 to the title company but that the circumstances of this payment were in dispute. The court noted that Galler Lehman never completed its purchase of the Property.

The trial court determined that Mr. Miller formed the LLC in order to purchase the Property when he saw that Galler Lehman was not going to close the deal. The court also found that the LLC purchased the Property at the end of September, after Galler Lehman failed to do so, and that $25,000.00 in nonrefundable earnest money in the title company's escrow account was applied because it had been forfeited to the seller. As the court further noted, the LLC established by Mr. Miller on September 3, 2014, was a single-member LLC rather than an LLC that included Mr. Murray and Mr. Vasile. The court reasoned that if there had been a definite agreement among the three, Mr. Miller would have named them as members of the LLC so that they could share liability for costs and expenses, such as the mortgage encumbering the Property.

The trial court further determined that Mr. Vasile and the heirs of Mr. Murray had failed to present clear and convincing evidence establishing an agreement among Mr. Miller, Mr. Murray, and Mr. Vasile concerning their co-ownership in a business entity. The court found that there was no meeting of the minds concerning the terms of the alleged contract regarding the LLC. Although testimony indicated that Mr. Murray was

working on an operating agreement when he died, neither a draft agreement nor testimony concerning its alleged terms was presented. As the court noted, assuming, *arguendo*, that a partnership agreement existed among Mr. Miller, Mr. Murray, and Mr. Vasile following the purchase of the Property, that partnership would have been dissolved when Mr. Murray died. The court determined that although there had been discussions among the parties about Mr. Murray's and Mr. Vasile's obtaining an interest in the LLC when they raised some capital, they had never done so; thus, they never acquired any interest in the existing, single-member LLC. In dismissing the claims of Mr. Vasile and Mr. Murray's heirs, the court reiterated that "the evidence of [a] partnership or a three-member [limited] liability company has not been proven to the standard of clear, cogent and convincing."

Upon our thorough review, we agree with the trial court's conclusion that Romglobal failed to present sufficient evidence of an implied partnership or its claimed membership in the LLC. As this Court previously explained in *Estate of Threefoot*, although a contract to form a partnership may be "express or implied, written or oral," in order to be enforceable, it must "'result from a meeting of the minds in mutual assent to terms, must be based upon sufficient consideration, and must be sufficiently definite.'" *In re Estate of Threefoot*, 2006 WL 3114147, at *5 (quoting *Wheeler v. Haley*, No. 91-267-1, 1993 WL 398489, at *5 (Tenn. Ct. App. Oct. 1, 1993)). Furthermore, the evidence must be clear and convincing, which has been defined as "eliminat[ing] any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence" and rendering the truth of the facts as alleged to be "'highly probable'" as opposed to "'more probable' than not." *Id*. at *6 (quoting *Lettner v. Plummer*, 559 S.W.2d 785, 787 (Tenn. 1977)).

Mr. Vasile's testimony and the other evidence presented in support of Romglobal's claims failed to prove sufficiently definite terms of any alleged agreement. Moreover, Mr. Miller's testimony demonstrated that there was, ultimately, no meeting of the minds and no mutual assent. We therefore affirm the trial court's determination that Romglobal failed to prove its claim of an implied agreement affording Romglobal an ownership interest in the LLC.

## VI. Joinder of Other Parties

Romglobal contends that the trial court also erred by requiring Romglobal to join Mr. Murray's heirs and Mr. Amberge as additional parties. Regarding the joinder of indispensable parties, Tennessee Rule of Civil Procedure 19.01 states:

> A person who is subject to service of process shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of

- 12 -

the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person properly should join as a plaintiff but refuses to do so, he or she may be made a defendant, or in a proper case, an involuntary plaintiff.

Concerning joinder of a party, this Court has previously stated: "[Tennessee Rule of Civil Procedure 19.01] is designed to protect the interests of absent persons as well as those before the court from multiple litigation and inconsistent judicial determinations." *Citizens Real Estate & Loan Co., Inc. v. Mountain States Dev. Corp.*, 633 S.W.2d 763, 766 (Tenn. Ct. App. 1981).

With regard to the distinction between a proper party and an indispensable one, this Court has further elucidated:

A "proper party" to a lawsuit is one who has legal or equitable rights in the subject of the litigation. A proper party is so connected with the dispute as to be under an enforceable obligation to the plaintiff, or to have a right or position with regard to the subject of the litigation that entitles him to defend against the court's judgment. However, a proper party is not necessarily an indispensable party for the purposes of Tenn. R. Civ. P. 19.01. "Only a party who will be directly affected by a decree *and whose interest is not represented by any other party to the litigation* is an indispensable or necessary party, that is, one without which no valid decree may be entered settling the rights between the parties that are before the [c]ourt." *Brewer* [*v. Lawson*], 569 S.W.2d [856,] 858 [(Tenn. Ct. App. 1978)](emphasis added).

*Moore v. Teddleton*, No. W2005-02746-COA-R3-CV, 2006 WL 3199273, at *6 (Tenn. Ct. App. Nov. 7, 2006) (other internal citations omitted).

In the case at bar, Mr. Amberge and Mr. Murray's heirs claimed an interest in the LLC in addition to the interests claimed by Mr. Vasile and Mr. Miller. The respective claims for ownership among the parties to the litigation were as follows: Mr. Miller claimed an ownership interest of 75.5%; Mr. Amberge claimed an ownership interest of 24.5%; Romglobal claimed an ownership interest of 33.3%; and the Murrays claimed an ownership interest of 33.3%. These combined claims would amount to the impossible sum of 166.6% in ownership interests in the LLC. Therefore, without joinder of the Murrays and Mr. Amberge, Mr. Miller could have been left subject to "double, multiple,

- 13 -

or otherwise inconsistent obligations by reasons of the claimed interest" by way of subsequent lawsuits brought by Mr. Amberge or the Murrays. *See* Tenn. R. Civ. P. 19.01. Furthermore, these parties would be directly affected by the court's decree, and their interests were not represented by any other party to the litigation. *See Brewer v. Lawson*, 569 S.W.2d 856, 858 (Tenn. Ct. App. 1978). Accordingly, the trial court was correct to require joinder of the Murrays and Mr. Amberge in order to determine the proper allocation of interests in the LLC with all involved parties present. Romglobal's issue raised concerning improper joinder is without merit.

## VII. Limitation on Cross-Examination

Finally, Romglobal argues that the trial court erred by failing to allow Mr. Miller to be cross-examined concerning whether his conduct violated the code of ethics applicable to realtors. With regard to Mr. Miller's claim that the $15,000.00 payment by Romglobal was in exchange for an oral extension of the closing date, Romglobal specifically asserts that such an oral extension given by a realtor is unethical and thus affects Mr. Miller's credibility. When Romglobal's attorney attempted to question Mr. Miller concerning the code of ethics applicable to realtors in reference to this extension, the trial court sustained the objection of Mr. Miller's attorney, finding such testimony to be irrelevant because the court could not adjudicate and had not been presented with an ethical claim.

As our Supreme Court has previously explained concerning relevancy rulings:

> Relevant evidence is admissible, and irrelevant evidence is not, unless excepted by the state and federal constitutions, the Tennessee Rules of Evidence, or other rules or laws generally applicable to the courts. Tenn. R. Evid. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. The admission of evidence is left to "the sound discretion of the trial judge," *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 442 (Tenn. 1992), and "[r]elevancy is always a judicial question to be determined according to the issue which is to be tried." *Randolph v. State*, 570 S.W.2d 869, 872 (Tenn. Crim. App. 1978) (quoting *Ellison v. State*, 549 S.W.2d 691, 696 (Tenn. Crim. App. 1976)). We review a trial court's admission of evidence under an abuse of discretion standard and will reverse the decision to admit evidence only if "the court applied an incorrect legal standard, or reached a decision which is against logic or reasoning" and admission of the evidence "caused an injustice to the party complaining." *State v. Gilliland*, 22 S.W.3d 266, 270

(Tenn. 2000) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)) (internal quotation marks omitted).

*In re Estate of Smallman*, 398 S.W.3d 134, 149 (Tenn. 2013).

The testimony sought in this matter—whether Mr. Miller's conduct in granting an oral extension of the closing date violated the code of ethics applicable to realtors—did not have a "tendency to make the existence of any <u>fact that is of consequence to the determination of the action</u> more probable or less probable than it would be without the evidence." *Id*. (quoting Tenn. R. Evid. 401) (emphasis added). Ultimately, whether Mr. Miller's conduct in granting an oral extension violated the applicable code of ethics for realtors had no bearing on whether the parties had a sufficiently definite and enforceable agreement granting Romglobal an ownership interest in the LLC. We therefore determine that the trial court did not abuse its discretion in excluding the testimony sought in cross-examination.[2]

## VIII. Conclusion

For the foregoing reasons, we affirm the trial court's dismissal of the claims filed by Romglobal. Costs on appeal are taxed to the appellant, Romglobal, Inc. This case is remanded to the trial court for collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE

---

[2] Moreover, although the trial court made no credibility findings, to the extent that this testimony could have been considered by the trial court in its analysis of Mr. Miller's credibility as a witness, we determine the trial court's exclusion of the evidence to be harmless error.